Dana M. Johnson, ID Bar # 8359
Wilderness Watch
P.O. Box 9765
Moscow, ID 83843
(208) 310-7003
danajohnson@wildernesswatch.org

*Counsel for Plaintiff Wilderness Watch*

Benjamin J. Scrimshaw, applicant, *pro hac vice* (MT Bar # 65138910)
Shiloh S. Hernandez, applicant, *pro hac vice* (MT Bar # 9970)
Emily T. Qiu, applicant, *pro hac vice* (MT Bar # 68269062)
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699 | Phone
bscrimshaw@earthjustice.org
shernandez@earthjustice.org
eqiu@earthjustice.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, FOOTLOOSE MONTANA, FRIENDS OF THE CLEARWATER, GALLATIN WILDLIFE ASSOCIATION, GLOBAL INDIGENOUS COUNCIL, THE HUMANE SOCIETY OF THE UNITED STATES, INTERNATIONAL WILDLIFE COEXISTENCE NETWORK, NIMIIPUU PROTECTING THE ENVIRONMENT, SIERRA CLUB, TRAP FREE MONTANA, WESTERN WATERSHEDS PROJECT, WILDERNESS WATCH, and WOLVES OF THE ROCKIES, <br><br> Plaintiffs, <br><br> vs. <br><br> BRAD LITTLE, Governor of Idaho; ED SCHRIEVER, Director of Idaho Department of Fish & Game; and DERICK ATTEBURY, DAVE | Case No. <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

| | |
|---|---|
| BOBBITT, GREG CAMERON, LANE CLEZIE, | ) |
| RON DAVIES, DON EBERT, TIM MURPHY, | ) |
| Members of the Idaho Fish and Wildlife | ) |
| Commission, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## INTRODUCTION

1.     This case addresses State Defendants' ongoing and increasingly aggressive efforts to slaughter Idaho's gray wolves, no matter the cost.  With their latest attack, State Defendants implemented legislation, signed by Governor Brad Little in May 2021, authorizing expanded wolf trapping with the aim of eliminating all but ten percent of Idaho's wolves.  While targeting wolves, however, the additional trapping and snaring will exacerbate the ongoing trapping of grizzly bears and Canada lynx ("lynx"), which are protected under the Endangered Species Act ("ESA") and whose habitat overlaps with gray wolves.  Even before State Defendants' latest actions, wolf trapping and snaring in Idaho already caused the accidental capture and killing of grizzly bears and lynx.  Because trapping and snaring of protected species constitutes unlawful "take" under the ESA and threatens irreparable harm, State Defendants' continued authorization and recent expansion of wolf trapping and snaring in grizzly bear and lynx habitat is unlawful and should be enjoined.

2.     Idaho's Selkirk and Cabinet-Yaak ecosystems have long provided sanctuary for threatened grizzly bears and lynx, and grizzly bears are also common in the Greater Yellowstone Ecosystem.  Additionally, grizzly bears are increasingly found in Idaho's Bitterroot Ecosystem, where lynx are also present.  Wolves are prevalent in all of these ecosystems, and Idaho's recent increases in wolf trapping and snaring thus introduce new dangers to grizzly bears and lynx.

1

3.      In the years since the federal government's 2011 ESA-delisting of gray wolves, the State of Idaho has quickly moved to ramp up wolf killing throughout the state, including through trapping and snaring in grizzly bear and lynx habitat.  In recent years, wolf trapping and snaring in Idaho have resulted in wolf trappers capturing threatened grizzly bears and lynx in wolf traps and snares.  Traps and snares are indiscriminate and are known to capture, injure, and kill non-target species at high rates, including grizzly bears and lynx.

4.      In 2021, State Defendants further expanded the wolf-trapping and snaring program throughout the state, including in grizzly bear and lynx habitat.  Among other things, State Defendants' new wolf-killing rules authorize: (1) a permanent wolf-trapping season on private property statewide; (2) an unlimited number of wolf tags, and thus wolf kills, per person; and (3) state-sponsored, private-contractor wolf killing in partnership with the Idaho Wolf Depredation Control Board.  Together, these measures are intended to create a new wave of wolf killings in Idaho, including through trapping and snaring.

5.      State Defendants also authorized continued wolf snaring and baiting in grizzly bear and lynx habitat.  Baits are designed to attract carnivores and, accordingly, attract grizzly bears and lynx to the site of wolf traps and snares.  Snares, even more than traps, severely injure and kill non-target animals at high rates.

6.      To protect grizzly bears and Canada lynx from the trapping and snaring threat posed by Idaho's wolf-killing scheme, Plaintiffs seek a declaratory judgment that State Defendants are violating the ESA and an injunction ordering State Defendants to bring into compliance with the ESA their authorization of trapping and snaring in grizzly bear and lynx habitat in Idaho.

## JURISDICTION AND VENUE

7.     Plaintiffs bring this action pursuant to the ESA, 16 U.S.C. § 1540.  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question) and the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-02 and 16 U.S.C. 1540(g).

8.     Venue is proper in this District pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because the ESA violations alleged in this Complaint occurred in this District, and State Defendants reside in this District.  Venue is proper in the Southern Division of this District because Defendants Brad Little and Ed Schriever reside in Boise County, and Defendant Tim Murphy resides in Valley County.  See Local Civ. R. 3.1.

9.     Plaintiffs have provided sixty days' written notice of their intent to file this suit as required by section 11(g) of the ESA. 16 U.S.C. § 1540(g)(2)(C).  On June 23, 2021, Plaintiffs provided State Defendants written notice of Plaintiffs' intent to sue under the ESA for authorizing wolf trapping and snaring in grizzly bear and lynx habitat.  On September 30, 2021, Plaintiffs gave State Defendants amended notice of their intent to sue.

## PARTIES

10.     Plaintiff Center for Biological Diversity ("The Center") is a nonprofit organization dedicated to the protection and restoration of biodiversity.  The Center is based in Tucson, Arizona, with staff and offices throughout the country, including in Idaho.  The Center has more than 81,000 members, including many who live within the current range of Canada lynx and grizzly bears in Idaho and where wolves are snared and trapped.  Because the Center values the Canada lynx, grizzly bear, and gray wolf, the Center places high priority on protecting

3

and recovering these species across their ranges.  The Center works toward this goal through education, advocacy, scientific study, and litigation.

11.     Plaintiff Footloose Montana is a nonprofit organization based in Missoula, Montana dedicated to the protection of wildlife and to end the nightmare of trapping.  Footloose Montana is committed to ending the slaughter of wolves in Idaho and Montana and protecting grizzly bears, lynx, and other endangered species.

12.     Plaintiff Friends of the Clearwater is a grassroots advocacy group that works to protect the public wildlands, wildlife, and waters in the Clearwater basin of north-central Idaho. Friends of the Clearwater was established in 1987 to defend the Idaho Clearwater Bioregion's wildlands and biodiversity and has about 800 members in north-central Idaho and across the country.  Friends of the Clearwater has engaged in monitoring, administrative advocacy, litigation, and public engagement aimed at protecting native carnivores, including grizzlies, lynx, and wolves.  Friends of the Clearwater is headquartered in Moscow, Idaho.

13.     Plaintiff Gallatin Wildlife Association ("GWA") is a local, all volunteer wildlife conservation organization dedicated to the preservation and restoration of wildlife, fisheries, habitat, and migration corridors in southwest Montana and the Greater Yellowstone Ecosystem, using science-based decision making.  GWA is a nonprofit 501(c)(3) organization founded in 1976.  GWA recognizes the intense pressures on our wildlife from habitat loss and climate change, and we advocate for science-based management of public lands for diverse public values, including but not limited to hunting and angling.

14.     Plaintiff Global Indigenous Council is a Tribal-run advocacy organization founded to defend indigenous lifeways and sovereignty since contact with Anglo-Europeans.  As part of this work, Global Indigenous Council works to protect against the decimation of two-

4

legged, four-legged, winged, amphibious, and rooted relatives.  Seeking to unite the First People

of the Earth around common causes, Global Indigenous Council is active in the fight to relist

gray wolves nationwide and opposes the collateral killing of grizzly bears, lynx, and many other

animals.  Global Indigenous Council is headquartered in Billings, Montana.

15.     Plaintiff Humane Society of the United States ("HSUS") is the nation's largest

animal protection organization.  Founded in 1954, HSUS is a nonprofit organization

headquartered in Washington D.C., with regional offices throughout the United States.  On

behalf of members and supporters nationwide, HSUS works to promote the humane treatment of

all animals and the protection and recovery of threatened and endangered species and their

habitats.  In furtherance of this mission, HSUS has consistently advocated for gray wolves,

grizzly bears, and Canada lynx through participation in federal and state regulatory processes,

legislative advocacy, litigation, and public outreach and education.

16.     Plaintiff International Wildlife Coexistence Network ("ICWN") is a nonprofit

501(c)(3) conservation organization based in Boise, Idaho.  ICWN provides expert

interdisciplinary assistance, training, collaboration, outreach, and shared research to enable

communities around the globe to coexist with wildlife.  ICWN is active in protecting wolves in

Idaho.

17.     Plaintiff Nimiipuu Protecting the Environment is a Tribal-run nonprofit that is

committed to protecting the "rights" of cohabitants in the Treaty of 1855 and Usual and

Accustomed areas of the Nez Perce Tribe or Nimiipuu, which include five National Forests in

Idaho, Montana, Washington, and Oregon.  Nimiipuu Protecting the Environment believes that

the management of any species should not be based on monetary gain or political bent.

Nimiipuu Protecting the Environment supports the wolves and grizzly bears in their Treaty area and is committed to protecting them and allowing them to coexist with humans.

18.     Plaintiff Sierra Club is a national nonprofit organization with 67 chapters and approximately 832,734 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the protection of vulnerable wildlife from the climate and extinction crisis through full implementation of the Endangered Species Act.  The Sierra Club's particular interest in this case and the issues which the case concerns stem from its decades of advocacy to broaden and ensure protections and full recovery for North American gray wolf species, recognizing that wolves play an important ecological role in maintaining healthy ecosystems including reducing the spread of wildlife diseases.  The Idaho Chapter of the Sierra Club has approximately 3,800 members, many of whom seek out experiencing wolves in the wild in Idaho and other states.

19.     Plaintiff Trap Free Montana is a nonprofit 501(c)(3) organization of hunters, ranchers, biologists, and outdoor enthusiasts all sharing a common denominator in advocating for wildlife.  Trap Free Montana values all wildlife and the science supporting their vital role in the ecosystem.  Trap Free Montana promotes education, respectful coexistence, and responsible stewardship.  Trap Free Montana provides the facts and exposes the secret truths in trapping, the vast toll it takes, and its indiscriminate nature.  Trap Free Montana is based out of western Montana in the Bitterroot mountains.

20.     Plaintiff Western Watersheds Project ("WWP") is a nonprofit conservation group dedicated to protecting and restoring wildlife and watersheds throughout the American West. Originally founded as Idaho Watersheds Project in 1993, WWP is headquartered in Hailey, Idaho, and a large proportion of our 12,000 members and supporters reside in Idaho.  WWP has advocated extensively for carnivore conservation and recovery, including for lynx and grizzly bears, and recognizes that ecosystems cannot function without a full complement of their top carnivores.  WWP has also educated the public and decisionmakers about the hazards of trapping.  Western Watersheds Project and its members strongly value healthy ecosystems, replete with all of their native biodiversity, including large carnivores.

21.     Plaintiff Wilderness Watch is a nonprofit conservation organization headquartered in Missoula, Montana with offices in Idaho and Minnesota.  Wilderness Watch's mission is the preservation and proper stewardship of land and rivers in the National Wilderness Preservation System and the National Wild and Scenic Rivers System, including protecting wildlife and ecosystems in their natural, untrammeled state.  Wilderness Watch has a long history of advocacy to preserve wilderness character in Idaho, including advocating to ensure wilderness-compatible hunting practices, protecting grizzly bear and other wildlife populations, and recovery of grizzly bears in the Selway-Bitterroot Wilderness and surrounding areas in the Bitterroot Recovery Zone.  Wilderness Watch has over 3,700 members, some of whom are hunters, and many of whom live in or visit Idaho.  Wilderness Watch's staff and members regularly visit grizzly and lynx habitat in Idaho for personal and professional pursuits, including scientific study, recreation, and aesthetic and spiritual purposes, and will continue to do so in the future.

22.     Plaintiff Wolves of the Rockies is a boots-on-the-ground, all-volunteer Montana nonprofit fighting to protect wolves from the irrational hatred and slaughter of Yellowstone, Idaho, and Montana wolves since 2010.  Wolves of the Rockies seeks to rebrand the wolf for what it truly is: "a guardian of our environment."

23.     All Plaintiffs have long-standing interests in the preservation and recovery of grizzly bears and lynx in Idaho, both because they and their members place a high value on these species, and because the presence of grizzly bears and lynx is essential to a healthy functioning of the ecosystem.  Plaintiffs have been active in seeking to protect and recover grizzly bears and lynx through a wide array of actions, including public outreach and education, scientific analysis, and advocacy intended to promote achievement of healthy ecosystem functioning in the region.

24.     Plaintiffs' members also use Idaho's grizzly bear and lynx habitat for spiritual and traditional activities and recreational pursuits, including hiking, camping, backpacking, wildlife viewing and aesthetic enjoyment.  In doing so, Plaintiffs' members and staff seek to observe, photograph, and study grizzly bears and lynx in their native habitat.  Plaintiffs derive aesthetic recreational, scientific, inspirational, religious, spiritual, and other benefits from these activities.

25.     Wolf traps and snares kill and maim indiscriminately, and past and reasonably certain future trapping and snaring of grizzly bears and lynx in wolf sets has caused, and will continue to cause, harm to Plaintiffs' members' interests in the well-being of individual grizzly bears and lynx, as well as domestic dogs, wolves, and other animals.  Idaho's challenged wolf-trapping scheme will also reduce opportunities for Plaintiffs' members to experience grizzly bears and lynx in the wild in Idaho by causing the reasonably certain trapping, snaring, injury, and mortality of these species.  The legal violations alleged in this complaint therefore cause

direct injury to the aesthetic, conservation, recreational, scientific, educational, inspirational, personal, spiritual, religious, and wildlife preservation interests of Plaintiffs and their members.

26.     Plaintiffs' aesthetic, conservation, recreational, scientific, educational, inspirational, personal, spiritual, religious, and wildlife preservation interests have been, are being, and, unless the relief prayed for in this Complaint is granted, will continue to be adversely and irreparably injured by State Defendants' failure to comply with federal law.  These are actual, concrete injuries, traceable to State Defendants' conduct, that would be redressed by the requested relief.  Plaintiffs have no adequate remedy at law.

27.     Defendant Brad Little is the Governor of Idaho.  Among other things, Defendant Little is responsible for implementing, and appointing state officials who oversee and implement state wildlife and trapping laws.  Defendant Little is sued in his official capacity.

28.     Defendant Ed Schriever is the Director of the Idaho Department of Fish and Game ("IDFG").  Among other things, Defendant Schriever is responsible for implementing and changing state wildlife and trapping laws and policies and managing and overseeing state officials who implement those laws and policies.  Defendant Schriever is sued in his official capacity.

29.     Defendant Derick Attebury is a member of the Idaho Fish and Wildlife Commission.  Among other things, Defendant Attebury is responsible for promulgating state wildlife and trapping rules, regulations, and policies, and managing state officials who oversee and implement those rules, regulations, and policies.  Defendant Attebury is sued in his official capacity.

30.     Defendant Dave Bobbitt is a member of the Idaho Fish and Wildlife Commission.  Among other things, Defendant Bobbitt is responsible for promulgating state wildlife and

9

trapping rules, regulations, and policies, and managing state officials who oversee and implement those rules, rules, and policies. Defendant Bobbitt is sued in his official capacity.

31.    Defendant Greg Cameron is a member of the Idaho Fish and Wildlife Commission. Among other things, Defendant Cameron is responsible for promulgating state wildlife and trapping rules, regulations, and policies, and managing state officials who oversee and implement those rules, regulations, and policies. Defendant Cameron is sued in his official capacity.

32.    Defendant Lane Clezie is a member of the Idaho Fish and Wildlife Commission. Among other things, Defendant Clezie is responsible for promulgating state wildlife and trapping rules, regulations, and policies, and managing state officials who oversee and implement those rules, regulations, and policies. Defendant Clezie is sued in his official capacity.

33.    Defendant Ron Davies is a member of the Idaho Fish and Wildlife Commission. Among other things, Defendant Davies is responsible for promulgating state wildlife and trapping rules, regulations, and policies, and managing state officials who oversee and implement those rules, regulations, and policies. Defendant Davies is sued in his official capacity.

34.    Defendant Don Ebert is a member of the Idaho Fish and Wildlife Commission. Among other things, Defendant Ebert is responsible for promulgating state wildlife and trapping rules, regulations, and policies, and managing state officials who oversee and implement those rules, regulations, and policies. Defendant Ebert is sued in his official capacity.

35.    Defendant Tim Murphy is a member of the Idaho Fish and Wildlife Commission. Among other things, Defendant Murphy is responsible for promulgating state wildlife and trapping rules, regulations, and policies, and managing state officials who oversee and

implement those rules, regulations, and policies.  Defendant Murphy is sued in his official capacity.

## LEGAL BACKGROUND

36.     "The ESA is 'the most comprehensive legislation for the preservation of endangered species ever enacted by any nation.'  It represents a commitment 'to halt and reverse the trend toward species extinction, whatever the cost.'"  Ctr. for Biological Diversity v. Zinke, 900 F.3d 1053, 1059 (9th Cir. 2018) (quoting Tenn. Valley Auth. v. Hill, 437 U.S. 153, 180, 184 (1978)) (internal citation omitted).

37.     To that end, Section 9 of the ESA prohibits the "take" of an endangered species unless specifically authorized by the relevant federal agency in an incidental take statement.  16 U.S.C. §§ 1538(a)(1)(B), 1539.  The ESA defines "take" to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or to attempt to engage in such conduct."  Id. § 1532(19).  "Take" includes direct as well as indirect harm and need not be purposeful.  See Babbitt v. Sweet Home Chapter of Comtys. for a Great Oregon, 515 U.S. 687, 704 (1995).

38.     The ESA's take prohibition applies equally to threatened species, unless otherwise indicated by a species-specific rule promulgated by the relevant federal agency pursuant to ESA § 4(d).  See 50 C.F.R. § 17.31(a).  The Service oversees ESA-compliance with respect to grizzly bears and Canada lynx.  The Service's species-specific rules for grizzly bears and lynx allow for no exception of take in the context of trapping or snaring of other species.  50 C.F.R. § 17.40(b) (grizzly bear); id. § 17.40(k) (lynx).

39.     These ESA protections apply equally against trapping or snaring authorized by a state official or agency.  "It is unlawful for any person" to "cause [an ESA violation] to be committed."  16 U.S.C. § 1538(g).  The term "person" includes "any officer, employee, agent,

department, or instrumentality … of any State, municipality, or political subdivision of a State … [or] any State, municipality, or political subdivision of a State ….” Id. § 1532(13).

40.     State hunting and trapping laws, regulations, and rules violate the ESA’s section 9 prohibition on take when “a risk of taking exists [even] if trappers comply with all applicable laws and regulations in place.” Animal Prot. Inst. v. Holsten, 541 F. Supp. 2d 1073, 1079 (D. Minn. 2008); accord Ctr. for Biological Diversity v. Otter, No. 1:14-CV-258-BLW, 2016 WL 233193, at *5 (D. Idaho Jan. 8, 2016), on reconsideration, 2018 WL 539329 (D. Idaho Jan. 24, 2018).

## FACTUAL BACKGROUND

## I.     THREATENED GRIZZLY BEARS

41.     The grizzly bear, Ursus arctos horribilis, once numbered roughly 50,000 individuals in the western United States.  However, with European-American settlement, grizzly bears were “shot, poisoned, and trapped wherever they were found,” eliminating them from all but a few isolated areas far removed from human intolerance.  Crow Indian Tribe v. United States, 343 F. Supp. 3d 999, 1004 (D. Mont. 2018) (quotation omitted).  By the time the Service listed grizzly bears in the contiguous United States as “threatened” under the ESA in 1975, grizzly bears had been “reduced to less than two percent of their former range in the lower-48 States … [and] the estimated population in the lower-48 states was 700 to 800 individuals.”  U.S. Fish and Wildlife Serv., Grizzly Bear in the Lower-48 States, 5-Year Status Review: Summary and Evaluation 3 (2021).

42.     Conservation efforts under the ESA have helped bring grizzly bears back from the brink, but the species remains confined to a few remnant populations in the northwest United

States.  To aid grizzly bear recovery, the Service has designated six areas as grizzly bear

recovery zones.

43.     Idaho is home in part to four of these recovery zones: (1) the Selkirk; (2) the

Cabinet-Yaak; (3) the Greater Yellowstone; and (4) the Bitterroot.

Grizzly Bear Recovery Zones and Estimated Distributions—U.S. Fish and Wildlife Serv.,
<u>Species Status Assessment for the Grizzly Bear in the Lower-48 States: A Biological Report</u> 62
(2021) ("<u>Status Assessment for the Grizzly Bear</u>")



*Figure 29. Estimated distribution of grizzly bears in the NCDE (2009-2018 data), GYE (2004-2018 data), CYE (2005-2019 data), and SE (2005-2019 data), and verified grizzly bear outlier observations between the ecosystems based on data from 2010 to October 15, 2020.*

44.     Idaho's grizzly bear populations are concentrated in and around northern Idaho's

Cabinet-Yaak and Selkirk Ecosystems and eastern Idaho's Greater Yellowstone Ecosystem

bordering Montana and Wyoming.  U.S. Fish and Wildlife Serv., <u>Grizzly Bear Recovery</u>

<u>Program 2018 Annual Report</u> 2-3, 5, 7, 10 (2018).  Additionally, there have been increasing

reports of grizzly bears in the Bitterroot Ecosystem, and the Grizzly Bear Recovery Program

states that "grizzly bears have increasingly been confirmed" near the Bitterroot Ecosystem. Id. at

12. Idaho's grizzly bear observation data shows significant grizzly activity in the Bitterroot

Ecosystem. Grizzly bears' current known distribution also extends beyond the designated

recovery zones.

45.     Grizzly bears are habitat "generalists" that "occupy[] habitats from deserts to

alpine mountains and everything in between." U.S. Fish and Wildlife Serv., Status Assessment

for the Grizzly Bear 47 (2021). Grizzly bear habitat and range include private lands adjacent to

public lands. Over the last decade, grizzly bears in Idaho have been widely reported to range

onto private property, including fruit orchards, ranchlands, and housing subdivisions.

46.     According to the Service, "grizzly bears are a conservation reliant species" and

"[e]ven when management actions succeed in achieving biological recovery goals, maintenance

of viable populations of [grizzly bears] will require continuing, species-specific intervention."

Id. at 205-206 (quotation and citation omitted).

## II.     THREATENED CANADA LYNX

47.     Canada lynx, Lynx canadensis, depend on abundant snow, a variety of high

elevation habitats for hunting and denning, and primarily snowshoe hares for prey. Lynx also

rely on habitat that can provide continuous forest cover.

48.     Lynx numbers and range in the contiguous United States are substantially reduced

from historical levels due to regulated and unregulated overexploitation that occurred in the

1970s and 1980s, including through trapping and snaring. In 2000, the Service listed lynx as

"threatened" under the ESA in the contiguous United States. See generally 65 Fed. Reg. 16052

(2000).  In the Northern Rocky Mountain region and in Idaho in particular, lynx live in coniferous forests of Douglas fir and western spruce.

49.     Lynx are known to be widely distributed throughout Idaho's Panhandle Region.

50.     Lynx also occur in substantial numbers in Idaho's neighboring Clearwater Region.

51.     Lynx survival within their range and habitat is threatened by local trapping conditions.  The Service states that "lynx are more likely to survive, breed, and replace themselves in the breeding population if they occupy home ranges where trapping is prohibited or trapping pressure is low."  U.S. Fish and Wildlife Serv., Species Status Assessment for the Canada Lynx (Lynx canadensis) Contiguous United States Distinct Population Segment 36 (2017) ("Status Assessment for Lynx").

## III.    PAST REPORTED TRAPPING AND SNARING OF GRIZZLY BEARS AND LYNX

52.     Even before Idaho's legislation and implementing regulations, which will greatly expand wolf trapping and snaring in grizzly bear and lynx habitat, individuals of these species have suffered harm from these practices in Idaho.

53.     In 2020, two grizzly bears were killed in incidents involving wolf snares in northern Idaho's Panhandle Region.  The first incident was reported to IDFG by a mushroom picker, who found a grizzly bear lying dead in a stream with a standard wolf snare wrapped tightly around its neck and another wound around its left front paw.  The second incident was reported by a hunter, who shot and killed a grizzly bear believing it to be a black bear.  On closer inspection, IDFG found that the bear had a wolf snare around its neck.  IDFG did not detail the extent of the injuries caused by the snare before the bear was shot.

54.     IDFG staff recalled another instance, sometime before 2016, when IDFG accidentally caught "a grizzly in a foothold wolf trap (research trapping for wolves)."  See E-mail from Jeremy Nicholson, IDFG, to Katherine Oelrich, Wildlife Staff Biologist, IDFG (Apr. 30, 2021, 10:14 MDT).  IDFG has not publicly released more information on this trapping incident.

55.     Since 2010, Idaho's neighboring State of Montana has reported seven captured grizzly bears since 2010 in traps set for wolves (three captures) or coyotes (four captures).  In one instance, Montana Fish, Wildlife & Parks found two severed grizzly bear toes in a wolf trap, and in another incident, the department noted that a grizzly bear sustained a foot injury from trapping.

56.     Researchers have found that grizzly bears with foot injuries, including missing toes, are more susceptible to subsequent conflict interactions with humans, which can lead to grizzly bear mortality (Lamb et al. 2021).

57.     Five lynx have been reported trapped in Idaho since the start of the 2011-2012 trapping season, including one in a wolf trap in 2014.  In neighboring Montana, four lynx have been reported trapped during that time, with one incident involving a wolf trap during the 2013-2014 trapping season.

58.     Because such incidents are under-reported, the number of grizzly bears and lynx captured by Idaho wolf trappers is likely much higher than these data indicate.

IV.     **IDAHO'S WOLF-TRAPPING AND SNARING PROGRAM**

59.     The Idaho Fish and Game Commission approved new wolf-trapping and snaring rules for the 2021-2022 wolf season in June 2021, which went into effect on July 1, 2021.  These rules provide for an expanded wolf-trapping regime in Idaho.

16

60.     Despite the continued threats facing grizzly bears and lynx, State Defendants' new rules further increase the trapping danger to these species by expanding wolf trapping and snaring in several respects.  First, State Defendants' new wolf-trapping and snaring rules establish a permanent wolf-trapping season on private property, dispensing with the state's prior prohibition of wolf trapping and snaring statewide between April 1st and September 9th. Second, the rules authorize trappers to obtain an <u>unlimited</u> number of wolf tags, up from the previous extremely liberal harvest limit of 15 wolves per person per season.  Third, the rules authorize a new program of state-sponsored, private-contractor wolf killing in partnership with Idaho's Wolf Depredation Control Board.  Additionally, the wolf rules continue to permit wolf snaring and baiting in grizzly bear and lynx habitat.

61.     Idaho's new permanent open wolf-trapping season on private property will alter conditions on large swaths of Idaho's grizzly bear, lynx, and wolf range and habitat.  For example, in Idaho's Game Management Unit 1, including all of Boundary County where two grizzlies were caught in wolf snares in 2020 and many of Idaho's grizzly bears reside, 29.2 percent of the land ownership is private and largely forested.  This private property is interspersed with public property.  Because of their closely overlapping habitat and range in Idaho, and because the new authorization of trapping between April and September coincides with the time when grizzlies are out of their winter dens and active, year-round wolf trapping on private lands poses a direct threat to both grizzly bears and lynx.

62.     Additionally, Idaho's elimination of limitations of wolf tags is a substantial departure from past state practice regulating gray wolf management.  While the previous 2020-2021 gray wolf hunting and trapping rules set the statewide trapper harvest limit at 15 wolves per

17

season, Idaho's new regime of unrestrained killing threatens to cover Idaho's landscape with yet more traps, including in grizzly bear and lynx habitat.

63.     State Defendants' authorization of state-sponsored, private-contractor wolf killing provides direct incentives for wolf trappers to undertake additional trapping and snaring in Idaho.

64.     Allowing continued wolf snaring and use of bait, when wolf trapping and snaring, further heightens the dangers to grizzly bear and lynx take in connection with Idaho's wolf-killing program. Snares are indiscriminate and known to catch and severely injure and kill non-target species at alarming rates, as exemplified by the two grizzly mortalities associated with wolf snares in northern Idaho in 2020.  Allowing the continued use of bait and other attractants heightens the danger associated with traps and snares, as bait is known to and is, in fact, designed to attract a wide variety of predators.  Accordingly, grizzly bears and lynx are attracted to bait used with traps and snares.

65.     Foothold traps and neck snares can cause harm ranging from rapid mortality to injuries that kill or impair grizzly bears and lynx long after release.  By their nature and function, traps and snares cause compression or constriction injuries that can damage tissue, restrict vascular flow, and create harmful effects beyond the constricted extremity.  The physiological effects of stress, trauma, and shock can also cause death after release.  Toxins can be released into the blood system after traps and snares are removed, resulting in organ damage and death.

66.     Other injuries from traps and snares include bone fractures, sprains, dislocations, tooth and gum damage from biting the traps and snares, hypothermia or hyperthermia, and dehydration.  Bone fractures to the phalangers and legs can be debilitating and result in death. These injuries can also affect long-term survival by impairing an individual's ability to catch prey.

67.     While trapped or snared, captured animals and their young are also susceptible to predation.  Orphaned young may die following the debilitation or death of their mothers in traps or snares.

68.     Idaho's wolf-trapping rules do not appreciably reduce the significant risk that grizzly bears and lynx will be incidentally caught in traps or snares intended for wolves.

## FIRST CAUSE OF ACTION

### (Violation of Endangered Species Act—Causing unlawful take of grizzly bears)

69.     Plaintiffs hereby reallege and reincorporate Paragraphs 1 through 68.

70.     Section 9 of the ESA prohibits any person from taking an endangered species.  16 U.S.C. § 1538(a)(1)(B).

71.     By regulation, the Service has extended the prohibition on take to grizzly bears as a threatened species.  50 C.F.R. § 17.40(b)(1)(i)(A).

72.     The ESA defines a "person" to include any "officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality or political subdivision of a State."  16 U.S.C. § 1532(13).

73.     The ESA not only prohibits a person from taking a listed species, but it also prohibits a third party from authorizing or allowing a person to conduct an activity that results in the take of a listed species.

74.     State officials and agencies that authorize, allow, permit, or license activities that are reasonably certain to continue to result in take of threatened species are in violation of the ESA.

75.     State Defendants have violated, and are in violation, of the ESA by authorizing wolf trapping in grizzly bear habitat in Idaho because that authorization has caused, and is reasonably certain to cause, the take of grizzly bears.

## SECOND CAUSE OF ACTION

### (Violation of Endangered Species Act—Causing unlawful take of Canada lynx)

76.     Plaintiffs hereby reallege and reincorporate Paragraphs 1 through 75.

77.     Section 9 of the ESA prohibits any person from taking an endangered species.  16 U.S.C. § 1538(a)(1)(B).

78.     By regulation, the Service has extended the prohibition on take to lynx as a threatened species.  50 C.F.R. §§ 17.40(k)(2), 17.31(a).

79.     The ESA defines a "person" to include any "officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality or political subdivision of a State."  16 U.S.C. § 1532(13).

80.     The ESA not only prohibits a person from taking a listed species, but it also prohibits a third party from authorizing or allowing a person to conduct an activity that results in the take of a listed species.

81.     State officials and agencies that authorize, allow, permit, or license activities that are reasonably certain to continue to result in take of threatened species are in violation of the ESA.

82.     State Defendants have violated, and are in violation, of the ESA by authorizing wolf trapping in lynx habitat in Idaho because that authorization has caused, and is reasonably certain to cause, the take of Canada lynx.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully request that this Court:

1.      Declare that State Defendants' authorization of wolf trapping and snaring in grizzly bear and lynx habitat violates the ESA;

2.      Enjoin State Defendants from violating the ESA by ordering them to bring Idaho's wolf-trapping and snaring regulations into compliance with federal law;

3.      Award Plaintiffs their reasonable fees, costs, and expenses, including attorney fees, associated with this litigation; and

4.      Grant Plaintiffs such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 6th day of December, 2021.

/s/ Dana M. Johnson
Dana M. Johnson, ID Bar # 8359
Wilderness Watch
P.O. Box 9765
Moscow, ID 83843
(208) 310-7003
danajohnson@wildernesswatch.org

*Counsel for Plaintiff Wilderness Watch*

/s/ Benjamin J. Scrimshaw
Benjamin J. Scrimshaw, applicant,
*pro hac vice* (MT Bar # 65138910)
Shiloh S. Hernandez, applicant,
*pro hac vice* (MT Bar # 9970)
Emily T. Qiu, applicant,
*pro hac vice* (MT Bar # 68269062)
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699 | Phone
bscrimshaw@earthjustice.org
shernandez@earthjustice.org
eqiu@earthjustice.org

*Counsel for Plaintiffs*