RAÚL R. LABRADOR
ATTORNEY GENERAL
STATE OF IDAHO
SCOTT L. CAMPBELL
Chief, Energy & Natural Resources Division
KATHLEEN E. TREVER (Idaho Bar No. 4862)
OWEN H. MORONEY (Idaho Bar No. 9553)
Deputy Attorneys General
600 S. WALNUT STREET
P.O. BOX 25
BOISE, ID 83707
TELEPHONE: (208) 334-3715
E-Mail:  kathleen.trever@idfg.idaho.gov
        owen.moroney@idfg.idaho.gov

*Attorneys for State of Idaho Officials*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 1:21-cv-00479-CWD |
| Plaintiffs, | IDAHO OFFICIALS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [Dkt. 52] |
| vs. | |
| BRAD LITTLE, Governor of Idaho; JIM FREDERICKS, Director of Idaho Department of Fish and Game; and DERICK ATTEBURY, DAVE BOBBIT, GREG CAMERON, JORDAN CHEIRETT, RON DAVIES, DON EBERT AND TIM MURPHY, Members of the Idaho Fish and Game Commission, | and IN SUPPORT OF IDAHO OFFICIALS' CROSS-MOTION FOR SUMMARY JUDGMENT [Dkt. 59] |
| Defendants, | |
| and IDAHO TRAPPERS ASSOCIATION *et al*, | |
| Defendant-Intervenors. | |

# TABLE OF CONTENTS

I.  SUMMARY ................................................................................................................ 3

II.  FACTUAL BACKGROUND ..................................................................................... 4

III.  STANDARD OF REVIEW ........................................................................................ 5

IV.  ARGUMENT ............................................................................................................. 7

   A.  Three grizzly bear captures—previously reviewed by the Court—do not provide requisite causal connections to the challenged action, and do not show a "reasonably certain threat of imminent harm" warranting Plaintiffs' requested relief. ........................................................... 7

   B.  Speculated "unreported take" of grizzly bears by private trappers in Idaho does not support vicarious ESA liability or injunctive relief against Idaho. ............................................. 9

   C.  Speculation based on grizzly bear captures occurring outside of Idaho does not provide a causal link for vicarious liability or injunctive relief. ............................................................. 10

   D.  Speculation based on trapping for animals other than wolves, or on non-target captures of other species, does not provide a causal link to the challenged conduct. ................................. 13

      1.  Trapping targeting animals other than wolves ................................................... 13

      2.  Non-target catches of species other than grizzly bears ..................................... 14

   E.  A review of the history of Idaho recreational wolf trapping supports grant of Idaho's summary judgment motion .................................................................................................... 17

   F.  Plaintiffs' allegations are insufficient to support standing or their requested relief. ......... 18

   G.  The facts and law do not support vicarious ESA liability against Idaho for its regulation of recreational wolf trapping. ................................................................................................ 19

   H.  Plaintiffs' requested relief is not supported by facts or law .............................................. 21

V.  CONCLUSION ........................................................................................................ 22

# I.    SUMMARY

Zero.  Since Idaho Officials (Idaho) opened recreational wolf trapping seasons in 2011, there have been no documented instances of grizzly bears caught in wolf traps under this regulatory framework. Plaintiffs seek to impose vicarious ESA liability against Idaho based on speculation about future grizzly bear captures, contradicted by more than a decade without any occurring. Plaintiffs fail to meet their burden as to their claim of an ongoing ESA violation or likely future violation caused by *Idaho's* regulation of recreational wolf trappers. Plaintiffs likewise fail to show "[a] reasonably certain threat of imminent harm" to grizzly bears and related injury to Plaintiffs caused by *Idaho's* regulation justifying their requested relief.

In the absence of actual violation, Plaintiffs proffer speculation based on captures under regulatory frameworks *different* from the one they challenge, referring to three grizzly bear captures occurring in or near Idaho since 2012, and alleging 19 other scantly detailed grizzly "confirmed" grizzly bear captures in wolf traps occurring outside of Idaho during the past 30 years across British Columbia, Alberta, Wyoming, and Montana. They also speculate about future violations based on captures of grizzly bears incidental to trapping for species other than wolves, trapping of non-target species other than grizzlies, and the possibility of unreported take.

The Court examined the three Idaho-related incidents and most of Plaintiffs' other speculations in denying their motion for preliminary relief. *Ctr. for Biol. Diversity v. Little*, 622 F.Supp.3d 997, 1000-02 (D. Idaho 2022). This Court reviewed the history of Idaho wolf trapping seasons since 2011, including incremental changes following 2021 legislation. *Id.* at 1003-04. The Court noted the restrictions that have remained unchanged in the Selkirk/Cabinet-Yaak and Greater Yellowstone Recovery Areas, which host Idaho's grizzly bear populations. *Id.* at 1003.

Injunctive relief "must be based on evidence not speculation." *Id.* at 1007. Plaintiffs' proffered experts admit they lack any recent Idaho-specific knowledge about the conduct of

recreational trapping, either on a statewide basis or in the limited areas of Idaho recognized as "grizzly country." Plaintiffs' speculations provide insufficient basis for granting their motion for summary judgment, and there is no genuine dispute of material fact that prevents the Court from granting summary judgment in favor of Idaho.

## II.    FACTUAL BACKGROUND[1]

The Court previously examined Plaintiffs' allegations and made findings of facts in its denial of Plaintiffs' motion for preliminary injunctive relief.[2] *Id.* at 1000-04. In the 16 months since the Court heard that argument, there have been no reported captures of grizzly bears in traps in Idaho under the challenged regulatory framework. The most recent 2021 and 2022 wolf harvest seasons (July 1, 2021 - June 30, 2022 and July 1, 2022, - June 30, 2023) indicate that wolf recreational trapping mortality remains comparable to that in preceding years (2018-2020). Total wolf mortality in Idaho for 2018-2022 has ranged from 585 in 2019 to 385 in 2018, with 477 in 2020, 485 in 2021 and 437 in 2022. *Oelrich 2nd Decl.* ¶8, Ex. N, O.

No practical effect has resulted from the 2021 legislation's allowance for individuals to purchase an unlimited number of wolf tags. In 2020, no individual came close to the prior limits of 15 or 30 tags. In the 2021 and 2022 seasons, most individuals continued to harvest only a

---

[1] Idaho has contemporaneously filed an Appendix pursuant to Fed. R. Civ. P. 56(c) with its evidentiary objections to testimony and exhibits proffered by Plaintiffs.

[2] Idaho notes a correction and update to the Court's prior Facts. First, there are six GMUs in which snaring is allowed Oct. 10 – Nov. 15 on public lands. *See Ctr. for Biol. Diversity*, 622 F. Supp. 3d at 1004 n. 4. This allowance has been in place since 2017 and has resulted in no incidental take of grizzly bears. *See Oelrich Decl. Ex. F* (Dkt. 19-7 at 11); *Oelrich 2nd Decl.* ¶ 10 (Dkt. 19-5). With the continued resiliency of the wolf population, the Commission has continued its incremental approach to wolf harvest management. For the 2023 season, the Commission made a more consistent "foothold trapping only" opener on September 10, merging the opener for units that previously opened for footholds on October 10, with those previously opening on September 10. Notably, the public land seasons for the Selkirk/Cabinet-Yaak (GMU 1) and Greater Yellowstone Recovery Areas are not changing; they remain restricted to November 15 – March 31, as they have been since 2011 and 2013, respectively. *Oelrich 2nd Decl.* ¶5, *Ex. M.*

single wolf—170 individuals in the 2022 season. *Id.* at ¶11. Few individuals harvested more than 5 wolves, and no individuals harvested more than 10 wolves (only one individual reaching that level in 2021 and 2022). *Id.* Since the Court's prior hearing, there have also been no reported non-target trapping of grizzly bears in Idaho under any other regulatory framework, including trapping for research, wildlife damage control, or intentional, illegal trapping. *Id.* at ¶15.

While wolves occupy much of Idaho, grizzly bear populations in Idaho are concentrated in and around the Selkirk/Cabinet-Yaak (in Game Unit 1) and the Greater Yellowstone Recovery Areas (Game Units 60, 61, 62, and 62A). *Oelrich Decl.* (Dkt. 19-5 at ¶5).  The U.S. Fish and Wildlife Service (USFWS) identifies current grizzly bear distribution as excluding IDFG's Salmon and Clearwater Regions and considers the Bitterroot Recovery Zone to be unoccupied by a grizzly population. *Qiu Decl., Ex. 1,* Dkt. 54 at 26, 28 (USFWS 2022 Grizzly Bear Status Assessment). Although there have been a few verified occurrences of grizzly bears in the Clearwater Region and two verified occurrences in the Salmon Region in recent years, these are known or suspected to be sub-adult males, which are highly transient and unlikely to remain in an area.[3] *Oelrich 2nd Decl.* ¶14. For example, the single radio-collared bear (No. 927) known to have come to the Clearwater Region spent a few months in Idaho in 2019, returned to Montana to den, and has not returned to Idaho. *See Oelrich Decl.* (Dkt. 19-5 ¶5); *see also Qiu Decl.* Dkt. 54 at 59.

### III.    STANDARD OF REVIEW

Standing and other jurisdictional matters are threshold issues. To establish Article III standing, Plaintiffs must show injury to themselves, which must be "concrete, particularized, and

---

[3] IDFG publicizes information about grizzly bears appearing in new or unusual places to minimize highly unlikely encounters for hunters, trappers and others in the area. *Boudreau Decl.* (Dkt. 19-2 at ¶43).

actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (quotation omitted).

The ESA citizen suit provision, 16 U.SC. § 1540 (g), provides a cause of action for injunctive relief to stop an ongoing or likely future ESA violation that constitutes "reasonably certain threat of imminent harm" to a listed species. *Marbled Murrelet v. Babbitt*, 83 F.3d. 1060 (9th Cir. 1996). To obtain injunctive relief, plaintiffs must show a definitive threat of future harm based on something other than mere speculation. *Ctr. for Biol. Diversity v. Little*, 622 F.Supp.3d at 1005 (citation omitted).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). At summary judgment a moving party must support assertions by citing to materials in the record, including documents, electronically stored information, affidavits or declarations, stipulations, discovery, or other materials. Fed.R.Civ.P. 56(c)(1)(A). A moving party may also show that materials cited do not establish the absence or presence of a genuine dispute of a material fact, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(B).

Where the party moving for summary judgment would not bear the burden of proof at trial, that party may cite to specific materials in the record or prevail simply by pointing out "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. 317, 325 (1986). Although all reasonable inferences that can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, the court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988) (citations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a case will

survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

## IV.    ARGUMENT

In Plaintiff organizations' similar prior suit against Idaho, the unauthorized take of a

single Canada lynx by a recreational wolf trapper during a 5-year period was not enough to

prevent summary judgment in Idaho's favor. *Ctr. for Biol. Diversity v. Otter,* 2018 WL 539329

(D. Idaho, 2018). In contrast to the single take in that case, take in this case is non-existent.

Without *any* actual grizzly bear take in Idaho recreational wolf trapping seasons since 2011,

Plaintiffs ask the Court for injunctive relief closing these seasons in the Panhandle, Clearwater,

Salmon, and Upper Snake Regions. *Ps' Memo* at 24. Their speculative assertions about the

likelihood of future take are unsupported, based on unreasonable inferences, and contradicted by

direct evidence: the absence of such take.

Plaintiffs again fail to show a likelihood of future violation or supply requisite causal links

between Idaho's regulatory action and Plaintiffs' alleged injuries. Such causal linkage is

necessary to waive Eleventh Amendment immunity, support Article III standing, and provide

vicarious ESA liability for obtaining injunctive relief. *See Ctr. for Biol. Diversity,* 2018 WL

539329 at *3. Summary judgment in favor of Idaho is again the proper outcome.

**A.    Three grizzly bear captures--previously reviewed by the Court--do not provide
requisite causal connections to the challenged action, and do not show a "reasonably
certain threat of imminent harm" warranting Plaintiffs' requested relief.**

At summary judgment Plaintiffs primarily renew the allegations the Court reviewed in

denying their motion for preliminary injunctive relief. *E.g., Ctr. for Biol. Diversity,* 662

F.Supp.3d at 1000-1002, 1006-1008. Over a year later, and after discovery, Plaintiffs fail to show

any actual ESA violation caused by Idaho's regulation of recreational wolf trapping. In

speculating about future possible take caused by Idaho, Plaintiffs fail to show "[a] reasonably certain threat of imminent harm" to grizzly bears and related injury to Plaintiffs.

Plaintiffs present nothing new for *any* actual Idaho-related incidents beyond the three that the Court has already reviewed and found distinguishable from the regulatory framework Plaintiffs challenge: (1) a May 25, 2012 capture (foothold trap) and release of a grizzly bear during IDFG wolf research on public lands in the Greater Yellowstone Area, at a time and place when recreational wolf trapping was prohibited in 2012 and remains prohibited under current seasons; (2) an unlawful snaring in Game Unit 1 in May 2020, an action subject to state and federal criminal prosecution, but with insufficient evidence as to the perpetrator; and (3) a hunter's self-reported mistaken identity shooting near the Idaho-Montana-British Columbia border in Unit 1 in August 2020, prosecuted by Idaho and involving a grizzly bear ear-tagged by British Columbia officials, in which a snare of unknown origin was attached to the bear. *Ctr. for Biol. Diversity*, 662 F.Supp.3d at 1000-02; *see Ps' Memo* at 17-18. None of these incidents is an ESA violation by Idaho recreational wolf trappers otherwise complying with state requirements.

Plaintiffs assert that past takings of ESA-listed species are instructive as to future takings. *Ps' Memo* at 10. However, the application of these three incidents to possible future take caused by Idaho's regulation of recreational wolf trapping is at most circumstantial. It is also contradicted by direct evidence:  the absence of take under the challenged framework. *See Ctr. for Biol. Diversity*, 662 F.Supp.3d at 1006; s*ee also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (reversing lower court grant of injunctive relief in the absence of documented case of injury to marine mammals during 40-year Navy program). Plaintiffs have alleged no specific instances, and Idaho is aware of none, of a trapper catching a

grizzly bear incidental to otherwise lawful recreational wolf trapping occurring in seasons

regulated by Idaho since 2011.

**B.    Speculated "unreported take" of grizzly bears by private trappers in Idaho does not support vicarious ESA liability or injunctive relief against Idaho.**

Idaho requires recreational trappers to report all catches of non-target wildlife, whether

alive or dead. *Oelrich Decl.*¶12; Idaho Administrative Code (IDAPA) 13.01.16.800.01. Without

documented non-target grizzly bear take under the challenged framework, Plaintiffs renew their

speculation of "additional takes that go unreported." *Ps' Memo* at 20, n.8. The Court previously

found there is always some danger that captures are going unreported, but that "injunctions and

declaratory relief must be based on evidence not speculation." *Ctr. for Biol. Diversity v. Little,*

*622 F.Supp.3d* at 1006-7 (citation and internal quotation omitted). Plaintiffs' renewed assertions

of unreported take should likewise be rejected.

Mandatory trapper reports are just one source of agency information for detecting non-

target grizzly bear injuries or mortality. Grizzly bears are the subject of considerable public and

agency scrutiny. *Boudreau 2nd Decl.* ¶25. State and federal agencies monitor grizzly bears

through radiocollaring, and they physically examine bears via research and conflict captures, and

mortalities investigated as a result of agency detection or public reports. *E.g., Boudreau Decl.*

¶34 (detections of illegal shootings—but no illegal trappings—by means of radiocollar mortality

signals); *id.* ¶25 (agency capture/tagging reports would identify injuries, scars, or deformities on

examined bears); *Servheen Dep.* at 79-80, 83-4, 160-1 (capture/mortality databases for Selkirk,

Cabinet-Yaak, Greater Yellowstone and NCDE, included hundreds of bears examined by agency

over a 20+ year time period without apparent trapping injuries occurring in Idaho other than the

known illegal snaring incident)[4]. Despite an array of sources and data documenting grizzly bear physical condition, Plaintiffs have only speculation to offer without evidence.

## C.  Speculation based on grizzly bear captures occurring outside of Idaho does not provide a causal link for vicarious liability or injunctive relief.

In the absence of past or ongoing ESA violations incidental to Idaho-regulated recreational wolf trapping, Plaintiffs offer other speculation based on past trapping incidents outside of Idaho. *Ps' Memo* at 18-20. However, Plaintiffs' allegations and proffered testimony and exhibits are inadmissible (per Appendix), vague, or otherwise fail to "connect the dots" to demonstrate "fair traceability" regarding trapper conduct and captures in other jurisdictions, and the challenged regulatory framework and recreational trapper conduct in Idaho. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42-3 (1976) (determining causation and redressability lacking where it was "purely speculative" that plaintiffs' allegations and implicit corollaries linked their injuries to the challenged defendant conduct, or were the result of unrelated factors or independent action of third parties not before the court).

Plaintiffs support their speculation with only 16 allegedly "confirmed" grizzly captures during the past 30 years by agency and private trappers targeting wolves in British Columbia, Alberta, Montana and Wyoming. *Ps' Memo* at 17 (referencing 19 captures with a deduction for the three Idaho-related incidents discussed *supra*). Plaintiffs' allegations are not authenticated or lack details as to recreational versus agency trapping, trap type, set placement, timing, or location. *E.g., Ps' Memo* at 19-20 (relying on vague literature references to "at least five grizzly bears in southern [British Columbia] were caught in wolf foothold traps" between 2010 and 2020, one grizzly bear caught in Alberta in August 2011 "in a snare designated for 'wolves that

---

[4]*Trever 2nd Decl.,* deposition excerpts: *Ex. A-Serveheen Dep.; Ex. B-Niemeyer Dep.; Exhibit C-Proulx Dep.; Ex. D- Vickers Dep.*

had depredated livestock,'" and reports from Montana of "three grizzly bears caught in wolf traps (one unverified)" by private trappers since 2010). Plaintiffs' speculations fail to correlate the circumstances of these captures with the conduct of Idaho recreational wolf trapping. Their speculations make unreasonable inferences based on generalities, and their speculations are contradicted by direct evidence—more than a decade without such captures in Idaho. *See McLaughlin,* 849 F.2d at 1208, n.8 (appropriateness of summary judgment when inferences are unreasonable and based on circumstantial evidence without "smoking gun" direct evidence).

To the extent these scantly detailed, alleged captures outside of Idaho are admissible, the non-target captures of grizzly bears by private trappers targeting wolves outside of Idaho are distinguishable. The Court previously reviewed distinctions among regulatory frameworks in British Columbia, Alberta, and Montana identified by Idaho relative to the Court's consideration of preliminary injunctive relief. *Ctr. for Biol. Diversity,* 622 F.Supp.3d at 1006; *see Boudreau Decl.* ¶¶28-29 (Dkt. 19-2). Plaintiffs' current proffer adds nothing to change the Court's prior determination on this issue.

Indeed, Plaintiffs' proffered experts have admitted their lack of knowledge regrading the past decade of recreational wolf trapping practices in Idaho, or Idaho trapping in general—specific foothold or snaring gear, set placements, locations, or trapping conduct in Idaho's "grizzly country." *Servheen Dep.* at 182, 186 (acknowledging no training or study of trapping other than trapping targeting bears with foot snares and culvert traps), *Niemeyer Dep.* at 27 (communications with Idaho trapping community since 2015 "They don't talk to me, I don't talk to them," and unable to name any trapper pursuing wolves in Greater Yellowstone or Panhandle); *Proulx Dep.* at 27, 37, 99 (acknowledging ignorance of what traps and snares are

legal and used in Idaho, and has done no work in Idaho); *Vickers Dep.* at 36, 44 (no experience or communication with Idaho recreational trappers).

Plaintiffs' 30-year tally of 16 bears outside Idaho includes areas where grizzly bear are more densely populated and have greater overlap with wolf populations. For example, British Columbia, where grizzly bears are not ESA-listed, has an estimated 15,000 grizzly bears, with densities ranging from 10 bears per 1,000 km$^2$ (386 mi2) to 400 per 1,000$^2$km.[2.] *See Trever 2nd Decl., Ex. E.* Plaintiffs' tally also includes captures by agency trappers or authorized private trappers in Canada conducting wildlife damage control, as well as trapping for radio-collaring research. *Ps' Memo* at 18-19 (referring to USDA Wildlife Services captures in Wyoming before 2014, two USDA captures in Montana, and trapping to address depredation in western Canada).

Trapping for research or wildlife damage control is distinct from recreational trapping because the trapping requires agency trappers to target particular animals at particular locations and times. *Niemeyer Dep.* at 44-6; *Boudreau 2nd Decl.* ¶42. Wildlife damage control includes targeting wolves, black bears, mountain lions, wolves, and coyotes that are killing livestock or posing public safety threats, in situations that would also be prone to grizzly bear conflict should grizzlies be present. *Boudreau 2nd Decl.* ¶44. Agency wildlife damage trappers use gear and sets that are distinguishable from the conduct of recreational wolf trapping in Idaho. *Boudreau 2nd Decl.* ¶¶42, 43. Unlike the agency trapper, a recreational trapper has full discretion to trap in Idaho where grizzly bears are not present. *See Boudreau 2nd Decl.* ¶20.

"A party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness." *Id.* at 856–57 (internal citation omitted). Moreover, "an expert report cannot be used to prove the existence of facts set forth therein." *In re Citric Acid Litig.*, 191 F.3d 1090,

1102 (9th Cir. 1999). Plaintiffs' proffered expert opinions consist of speculation unsupported by evidence and fail to provide the requisite causal link to the challenged state conduct.

**D.    Speculation based on trapping for animals other than wolves, or on non-target captures of other species, does not provide a causal link to the challenged conduct.**

Finally, Plaintiffs speculate about future grizzly bear take with attempts to analogize trapping for species other than wolves, referencing non-target captures of black bears and other species by Idaho recreational trappers.

### 1.  <u>Trapping targeting animals other than wolves</u>

For example, Plaintiffs renew their reference to a peer-reviewed study of injury to grizzly bears incidental to trapping for pine marten and weasel in a high-density grizzly bear population in western Canada. *See Ps' Memo* at 10. The study and its referenced test traps do not involve the capture of grizzly bears in wolf traps at all. They instead involve grizzly bear feet or toes being grabbed by small body-grip traps for pine marten in elevated sets (i.e., placed in trees or other location above ground level). The trapping involved is clearly distinguishable from Idaho recreational wolf trapping. *Boudreau* ¶38; *Servheen Dep.* at 96-97, 99. In addition, analogous trapping of or injury to grizzly bears during trapping of small furbearers is not known to have occurred in Idaho. *Niemeyer Dep.* at 95 (no Idaho incident); *Oelrich 2nd Decl.* ¶15.

Plaintiffs also refer to capture of grizzly bears outside of Idaho by trappers targeting coyotes during agency wildlife damage control activities or private trapping. *Ps' Memo* at 19-20. As discussed, *supra,* agency trapping for wildlife damage is distinguishable from recreational wolf trapping. *See Walrath Decl.* ¶12; *Servheen Dep.* at 17-18 ("the idea is to capture the animal that caused the offense, and you can't go very far away to be very sure of catching the right animal"); *Niemeyer Dep.* at 46. In addition, Plaintiffs cite no evidence, and Idaho is aware of none, during the past 20 years and beyond, where USDA Wildlife Services has captured a non-

target grizzly bear in Idaho, including agency trapping to control damage by wolves, coyotes, black bears, and mountain lions using a variety of foothold traps, foot snares and neck snares. *Oelrich 2nd. Decl.* ¶15. Again, the only non-target agency capture of grizzly bears in Idaho was the 2012 capture by an IDFG wolf researcher under circumstances that are prohibited for Idaho wolf recreational trappers, both in 2012 and now.

Idaho and Plaintiffs are also not aware of any grizzly bear in Idaho being caught incidentally to any otherwise lawfully set recreational trap, including traps targeting coyote, fox, and pine marten. *Oelrich 2nd. Decl.* ¶15 In Idaho, coyotes are classified as predatory wildlife by statute, and there has long been an unlimited year-round, state-wide trapping season (including foothold traps and neck snares) for anyone holding a trapping license, with few regulatory restrictions related to bait and set placement. *See Niemeyer Dep.* at 27. [5]

2. **Non-target catches of species other than grizzly bears**

Plaintiffs' additional assertions related to non-target captures by Idaho trappers of species other than grizzly bears area also unavailing. Plaintiffs do not support their speculation that non-target captures of black bears or other species correspond to a likelihood of future capture of grizzly bears presenting an imminent, reasonably certain harm caused by Idaho's regulation of recreational wolf trapping. Their speculation is unreasonable and contradicted by the absence of grizzly bear capture in over a decade of recreational wolf trapping seasons, and a longer time period for other recreational trapping seasons.

Plaintiffs renew their reliance on *Animal Welfare Inst. v. Beech Ridge Energy*, 675 F. Supp. 2d 540, (D. Md. 2009), and *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, Fla., 896

---

[5]Idaho Code § 36-201(1); *see,* e.g., Upland Game, Turkey & Furbearer, 2022 & 2023 Seasons & Rules at 35 *available at* https://idfg.idaho.gov/sites/default/files/seasons-rules-upland-2022-2023_0_0.pdf.

F. Supp. 1170, 1180 (M.D. Fla. 1995). E.g., *Ps' Memo* at 8, 21-2. This Court did not find these cases analogous in denying Plaintiffs' requested preliminary relief, and the Court's prior rationale still applies at summary judgment. The *Beech Ridge* case involved a 40-turbine project in West Virginia, and the district court found the turbines were "virtually certain" to kill endangered Indiana based on killing of other bat species and the presence of the listed bat. *Beech Ridge*, 675 F. Supp. 2d at 578. The *Beech Ridge* court discounted the lack of evidence of dead Indiana bats because "few" studies had searched for them, "mortality searches are generally inefficient," and the endangered bats are "rare." *Id.* at 579.

While grizzly bears in Idaho may be "rare" and limited in their distribution, it is undisputed that grizzly bears in Idaho are subject to great interest and study. *See supra 9.* Indeed, the Greater Yellowstone grizzly bear population is one of the most studied populations in the world. *Boudreau 2nd Decl.* ¶27 (over 1,058 grizzly bears radio-collared in Greater Yellowstone since 1975); *Servheen Dep. 56;* 65-67 (Recovery Coordinator authorizing removal of hundreds of bears for being maladaptive; Greater Yellowstone mortality database maintained by Interagency Grizzly Bear Study Team (IGBST), involving "hundreds" of mortalities over decades); *see Aber Decl. Ex. B-D,* Dkt. I9-1, (annual IGBST reports). Grizzly bears in the Cabinet-Yaak and Selkirk Recovery Areas have also been studied for decades. *Servheen Dep.* at 107 (publicly available annual reports for both the Selkirk and Cabinet-Yaak Ecosystems); *Boudreau* 2nd Decl. ¶28 (annual reporting reflects 59 grizzly bears radio-collared for research from 2007-2020 in the Selkirks).

In recent years IDFG has conducted extensive remote camera surveys for estimating summer wolf populations, as well as other smaller regional projects. *Oelrich Decl.* ¶19, *Ex. L.; Oelrich 2nd Decl.* ¶; While remote camera surveys from 2019-2022 have detected grizzly bears in areas of known distribution in the northern Panhandle and Greater Yellowstone Area, they have detected only one bear in the Clearwater Region, Bear 927 (a radio-collared grizzly who

made a brief foray into Idaho in 2019), and none in the Salmon Region. *Id. ¶18; Oelrich 2nd Decl. 16,* Ex. P.

Agency trappers and Idaho recreational trappers are required to report both target and non-target trapping captures, and there are various other mechanisms for detecting non-target grizzly bear mortality or injury. *See supra at 9.* In addition, past captures of black bears in Idaho are distinguishable from potential grizzly bear capture based on the two species' respective distribution, population size, individual size, and trapping activity. While there are 30,000 black bears that are "widespread" in Idaho, Idaho has only one to two hundred grizzly bears shared with neighboring states and Canada in their acknowledged "limited range" in Idaho (the Selkirk and Cabinet Yaak of the northernmost Panhandle and the small portion of the Greater Yellowstone Area in eastern Idaho). *See Servheen Dep.* at 53-4; *Boudreau 2nd Decl. ¶47; Walrath Decl. ¶13.* Idaho has areas of high black bear density where there is overlap with wolf populations but not with grizzly bear populations. *Boudreau Decl. ¶47; cf. Servheen dep.* at 106 ("there's certain places [in Idaho] where there are lots of black bears. I'm not an expert on black bear distribution or density in Idaho, though…")

Grizzly bears and black bears are biologically distinct, with grizzly bears larger, heavier and with bigger skulls than black bears. *Walrath Decl. ¶15; Boudreau 2nd Decl. ¶¶ 48-49.* Black bear feet are slightly larger than gray wolf feet, while adult grizzly bears have much larger feet and protruding claws. *Id. ¶ 49; Walrath Decl. ¶15.* For example, when grizzly bear trapping was allowed, trappers targeted grizzly bears with foothold traps with jaw spreads of 12-16," larger the 9" jaw spread that is now the maximum now allowed for all recreational trapping in Idaho. *Boudreau 2nd Decl. ¶22; Servheen Dep.* at 10.

Idaho has mandatory trapper education and wolf-specific education, and trappers have many options to avoid capturing grizzly bears in Idaho. *Boudreau 2nd Decl.* ¶34. Importantly, unlike agency trappers involved in conflict management and research, Idaho recreational wolf trappers can readily avoid locations and times where grizzly bears are likely to be present and can trap elsewhere. Trappers have a strong legal and self-preservation incentive to avoid capturing grizzly bears. *Id.* While there may be a possibility of capture of non-target grizzly bear in Idaho wolf trapping seasons, the absence of such take shows that Plaintiffs broad speculations are unreasonable inferences contradicted by direct evidence.

Plaintiffs' speculative assertions about non-target grizzly bear captures outside of Idaho (including target species in addition to wolves) and, non-target captures of animals other than grizzly bears fail to provide a "fairly traceable" causal connection to Idaho's regulation of recreational wolf trapping and do not provide a genuine factual basis for granting Plaintiffs' summary judgment motion. Nor do they create a genuine dispute of material fact for denying Idaho's motion for summary judgment.

**E.    A review of the history of Idaho recreational wolf trapping supports grant of Idaho's summary judgment motion.**

The Court previously reviewed the history of the incremental changes to Idaho wolf trapping seasons since 2011, including incremental changes following 2021 legislation. *Ctr. for Biol. Diversity, 662 F.Supp.3d.* at 1003-04. Information regarding recreational trapping arising in the year since the Court considered preliminary injunctive relief provides no reason to change the Court's findings. *Oelrich 2nd Decl.* ¶8, Ex. N; O. Like information the Court reviewed previously, the increments of change have not resulted in dramatic change in wolf trapping harvest: total mortality has remained comparable to recent years. *See supra* at 4.  Allegations of dramatic increases in trapping effort in response to the 2021 legislation appear inaccurate.

Idaho's regulatory approach has included additional caution relative to length of seasons the in the occupied Selkirk/Cabinet-Yaak and Greater Yellowstone Recovery Areas. Public land seasons in these occupied Recovery Zones remain restricted, as they have been since 2011 and 2013, respectively. *Oelrich 2nd Decl.* ¶4. Seasons in these units remain restrict limited to November 15 to March 31 to align with grizzly bear denning periods. *Oelrich Decl.* Dkt 19-5 at 10 a, b.   The 2021 legislation has not resulted in changes to snaring seasons, and extensions of trapping season have been restricted to foothold trapping only. *Oelrich 2nd Decl.* ¶4. These expanded private land seasons have occurred for two years without documented incidental take of grizzly bears and with limited harvest. *Id.* at 15. Trapping seasons do not authorize trespass onto private lands. *Id., Ex. M* (wolf season proclamation notes "Trapper use pf private land must comply with trespass laws. Private property owners may have specific restrictions for trapping"). Private land is often unsuitable habitat for grizzly bears, because of the potential for bear/human conflict, grizzly bears found on private land are often removed *Ctr. for Biol. Diversity*, 622 F.Supp.3d at 1000 (citing *Scrimshaw Decl. Ex.* G (Dkit. 6-13) (table documenting grizzly bear/human conflicts in Idaho between 2009 – 2020); *see also Oelrich 2nd Decl.* ¶12.

**F.    Plaintiffs' allegations are insufficient to support standing or their requested relief.**

Plaintiffs do not provide evidence of any injuries to themselves or the listed entity of grizzly bear in the lower-48 States[6] that are traceable to ESA violations caused by Idaho's regulation of recreational wolf trapping. *See Ps' Memo* at 8, n.1. Plaintiffs' alleged injuries (e.g.,

---

[6] The security of the Yellowstone grizzly bear population and associated mortality management stand against Plaintiffs' alleged injury and irreparable harm. USFWS delisted the Greater Yellowstone grizzly population as recovered in both 2007 and 2017. 82 Fed. Reg. 30,502.[6] USFWS identified a Demographic Monitoring Area (DMA) for this population's monitoring and mortality management, outside of which mortality can be excluded from consideration. 82 Fed. Reg. at 30,555 ("suitable habitat contained within the DMA is sufficiently large to support a long-term viable population such that mortalities outside the DMA can be excluded").

inability to see grizzly bears and psychological or spiritual harms) [7] are based on possible future harm to grizzly bears that is not certainly impending or traceable to the challenged action. Such alleged injuries cannot form the basis for Article III standing or injunctive relief. *See Clappe,* 568 U.S. at 410 (standing absent when it rests on a "speculative chain of possibilities that does not establish injury" or is not "certainly impending" or "fairly traceable" to challenged conduct).

Plaintiffs also alleged injury[8] related to fear for safety of themselves, their loved ones, their pets, and animals other than grizzly bears in traps. [9] They also alleged psychological or spiritual harm from trapping in general. The ESA does not apply to people, pets, or wolves in Idaho, and it does not restrict trapping as a general matter. Trapping for wolves and other wildlife is legal in Idaho, and Plaintiffs risk these injuries unrelated to the take of ESA-listed species. *See Wildlife Guardians v. Mark,* 2013 WL 6842771 at *4-5. These alleged injuries are not "fairly traceable" to alleged ESA violations caused by Idaho, and are insufficient to form the basis for Article III standing or injunctive relief to address purported future ESA violations. *See Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.,* 789 F.3d 1075, 1091 (9th Cir. 2015).

## G.    The facts and law do not support vicarious ESA liability against Idaho for its regulation of recreational wolf trapping.

Contrary to Plaintiffs' assertions, Idaho has taken a cautious, incremental approach to regulation of recreational wolf trapping since 2011. Idaho has distinguished seasons for private and public lands, based on wolf population resiliency, wolf habitat suitability, conflict

---

[7] *See Torline Decl.* (Dkt. 6-4) ¶13; *Sieracki Decl.* (Dkt. 6-8) ¶¶20-21; *Bear Stands Last Decl.* (Dkt. 6-9) ¶14; *Stone Decl.* (Dkt. 6-10). Plaintiffs' alleged injuries are even more speculative and distant when they are based on the inability to see grizzly bears or other harm related to possible trapping of grizzly bears in areas that do not host grizzly bear populations (e.g., Bitterroot Recovery Area). *See Haverstick Decl.* (Dkt. 6-2) ¶13; *Macfarlane Decl.* (Dkt. 6-3) ¶¶7-9; *Brown Decl.* (Dkt. 6-5) ¶¶ 30-1; *Campbell Decl.* (Dkt. 6-6) ¶¶7-8; *Almquist Decl.* (Dkt. 6-7) ¶¶20-1.
[8] E.g., *Brown Decl.* (Dkt. 6-5) ¶23; *Stone Decl.* (Dkt. 6-10) ¶6; *Campbell Decl.* (Dkt. 6-6) ¶10.
[9] Plaintiffs amended their Complaint to remove claims related to take of lynx (Dkt. 50). Plaintiffs' declarants alleged injuries relative to lynx are no longer relevant to this case.

management, social management among recreational users, and additional caution in occupied grizzly bear recovery areas. *Boudreau 2nd Decl.* ¶37.  *See supra at* 18.

Idaho notes it has specifically *not* authorized recreational trappers to capture grizzly bears. IDFG's wolf season trapping proclamation specifically reminds trappers that taking of ESA-listed species subjects them to prosecution for violation of the ESA. *Oelrich 2nd Decl. Ex. M*  ("Caution about Non-Target Catch of Endangered Species: . . . "Non-target capture of endangered species (such as grizzly bear or lynx ) or other federally protected animals is not authorized…") .  Idaho law also provides statutory authority for prosecuting possession of wildlife taken in violation of federal, state or tribal law, which includes the ESA. Idaho Code 36-504(a). Since there has been no reported incidental take, IDFG has not exercised its enforcement authorities relative to such take. IDFG has, however, exercised enforcement authority in investigating and supporting prosecution of unauthorized taking of ESA-listed grizzly bear under applicable state law, including intentionally unlawful take and shootings involving mistaken identity as to species. *See, e.g., Johnson Decl.* ¶17 (Dkt.19-3); *Qiu Decl.,* Dkt. 54 at 194-6.

Idaho contends that the ESA's language and statutory framework do not support vicarious liability under ESA §9 for state and local licensing and regulatory activities. 16 U.S.C. 1538(a); *cf.* 16 U.S.C. 1536(a) (§7 consultation requirements limited to *federal* agency licensing and other regulatory approval actions). Ultimately, recreational wolf trapping is not itself an official government activity in Idaho. It is an activity conducted by independent private trappers, who have broad discretion in gear choice, geographic locations, bait, specific sets, and placements. This independence should make these activities comparable to the rejection of vicarious state liability for the actions of state-licensed drivers and other similar state permitholders who are authorized—but not compelled—to undertake an activity. *See Aransas v.*

*Shaw,* 775 F.3d 641, 659-62 (5ᵗʰ Cir. 2014) (analogizing state-licensed driving in rejecting vicarious liability for state permitting of water use relative to whooping crane deaths "in the face of multiple, natural, independent, unpredictable and interrelated forces").

 Idaho recognizes that other circuits and lower courts have reached different conclusions to find vicarious liability for state-regulated trapping and fishing activities by private parties. *See, e.g., Strahan v. Coxe,* 127 F.3d 155 (1st Cir.1997) (vicarious liability for state licensure of commercial use of gillnets and lobster pots in a  specific manner shown to harm 50% of ESA-listed northern right whales during their high season in certain areas of designated critical habitat); s*ee also, Animal Protection Inst. v. Holsten,* 541 F.Supp.2d 1073 (D. Minn. 2008), (finding Minnesota's licensure and regulation of trapping vicariously liable where licensed trappers captured 13 ESA-listed Canada lynx in an approximately 5 year period).

The undisputed facts of this case, however, do not support vicarious liability against Idaho anywhere along this spectrum of case law regarding vicarious ESA liability. In the absence of take or actual harm to grizzly bears under the challenged state regulatory framework since 2011, there is no private party ESA violation for which Idaho may be vicariously liable.

## H.  Plaintiffs' requested relief is not supported by facts or law.

Plaintiffs seeking injunctive relief through an ESA citizen suit "must show that irreparable harm to the listed species will result from a defendants' violation in the absence of each [protective] measure plaintiffs request." *Cottonwood Envtl. Law Ctr.,* 789 F.3d at 1091-1092 (punctuation in original, citation omitted). The "possibility" of irreparable harm cannot support an injunction. *Id.,* citing *Winter*, 555 U.S. at 22.

Idaho has state regulatory and enforcement authorities relative to the taking of wildlife, and has administrative procedural requirements relative to the setting of harvest seasons and

rules for such activities. *See, e.g.,* Idaho Code § 74-201 *et seq.* (Idaho Open Meeting Law requirements); Idaho Code §§ 36-104(b)(3), § 36-106(e)(6)(A) (Commission and Director authorities to close seasons or adopt restrictions after making requisite findings); Idaho Code § 36-504(a) (prohibiting possession of wildlife taken in violation of federal, state, or tribal law). Plaintiffs asks the Court to short circuit Idaho's state authorities and procedural requirements for sovereign regulatory actions, based on speculative future take by private trappers with considerable discretion in their independent actions. Plaintiffs seek sweeping, imprecise mandatory relief in the absence of violation, harm to Plaintiffs, or harm to the listed species. Plaintiffs simply fail to meet the standard for injunctive relief.

Plaintiffs' requested relief is also inconsistent with the intended scope of *Ex parte Young's* waiver of Eleventh Amendment sovereign immunity. Plaintiffs seek to force state conduct to deter hypothetical, speculative ESA violations by independent third parties subject to both state and federal regulation. *Ex parte Young's* waiver of the Eleventh Amendment is narrow and permits relief that "serves directly to bring an end to a present violation of federal law" but does not permit relief designed to encourage future compliance with federal law through deterrence. *Papasan v. Allain*, 478 U.S. 265, 277–79 (1986); *Green v. Mansour*, 474 U.S. 64, 68 (1985) (finding deterrence interests insufficient to overcome Eleventh Amendment dictates).

## V.    CONCLUSION

The Court should deny Plaintiffs' Motion for Summary Judgment and grant Idaho's Cross-Motion for Summary Judgment.

Respectfully submitted this 8th day of August, 2023.

*/s/ Kathleen. E. Trever*
Kathleen E. Trever
Deputy Attorney General