Dana M. Johnson, ID Bar # 8359
Wilderness Watch
P.O. Box 9765
Moscow, ID 83843
(208) 310-7003
danajohnson@wildernesswatch.org

*Counsel for Plaintiff Wilderness Watch*

Benjamin J. Scrimshaw, *pro hac vice*
Shiloh S. Hernandez, *pro hac vice*
Emily T. Qiu, *pro hac vice*
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699
bscrimshaw@earthjustice.org
shernandez@earthjustice.org
eqiu@earthjustice.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 1:21-cv-00479-CWD |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [Dkt. 52] AND RESPONSE IN OPPOSITION TO STATE DEFENDANTS' AND INTERVENORS' CROSS MOTIONS FOR SUMMARY JUDGMENT [Dkt. 59 and Dkt. 66]** |
| BRAD LITTLE, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. STATE DEFENDANTS' EXPERT ADMISSIONS DEMONSTRATE FUTURE GRIZZLY BEAR TAKE IS LIKELY. ........ 2

A. Intervenors Fail to Create a Genuine Issue of Fact—Baits and Lures Attract Grizzly Bears to Wolf Traps and Snares. ........ 2

B. Defendants Cannot Rebut that Wolf Traps and Snares Threaten Grizzly Bear Capture. ........ 4

C. Even State Defendants' Expert Agrees—Idaho's Rules Fail to Prevent Take. ........ 6

D. Defendants' Experts Admit Recommended Equipment Modifications Fail to Reduce Take and are Also Voluntary and Unenforceable ........ 7

II. PRIOR TRAPPING AND SNARING INCIDENTS DEMONSTRATE THAT FUTURE TAKE IS LIKELY. ........ 8

A. Defendants Distract from the Instructive Value of Prior Takings in Idaho ........ 9

B. Defendants Provide No Compelling Reason to Dismiss Grizzly Bear Capture and Mortality from Other Jurisdictions. ........ 12

C. Evidence of Black Bear Capture and Mortality in Idaho Further Demonstrates the Trapping Danger to Grizzly Bears. ........ 16

III. STATE DEFENDANTS' REMAINING ARGUMENTS ON STANDING, IMMUNITY, AND VICARIOUS LIABILITY ARE MERITLESS. ........ 17

IV. THIS COURT SHOULD GRANT THE REQUESTED INJUNCTIVE RELIEF. ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Animal Prot. Inst. v. Holsten,
541 F. Supp. 2d 1073 (D. Minn. 2008) .......... 13, 18

Animal Welfare Inst. v. Beech Ridge Energy,
675 F. Supp. 2d 540 (D. Md. 2009) .......... 9, 16, 17, 20

Clapper v. Amnesty Int'l,
568 U.S. 398 (2013) .......... 18

Ctr. for Biological Diversity v. C.L. Otter,
No. 1:14-CV-258-BLW, 2016 WL 233193 (D. Idaho Jan. 8, 2016) .......... *passim*

Forest Conservation Council v. Rosboro Lumber Co.,
50 F.3d 781 (9th Cir. 1995) .......... 20

Friends of the Earth, Inc. v. Laidlaw Env't Services, Inc.,
528 U.S. 167 (2000) .......... 18

Martinez v. United States,
No. 2:21-cv-03735-FWS-MAR, 2022 WL 17078646 (C.D. Cal. Nov. 2, 2022) .......... 3

N. Cal. Collection Servs. Inc. of Sacramento v. Cent. Sierra Constr., Inc.,
370 F. App'x 774 (9th Cir. 2010) .......... 3–4

Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.,
23 F.3d 1508 (9th Cir. 1994) .......... 1, 9, 12, 16

Red Wolf Coal. v. N.C. Wildlife Res. Comm'n,
No. 2:13-CV-60-BO 2014, WL 1922234 (E.D.N.C. May 13, 2014) .......... 13–14, 14

Stephens v. Union Pac. R.R. Co.,
935 F. 3d 852 (9th Cir. 2019) .......... 6

Strahan v. Coxe (Strahan I),
127 F.3d 155 (1st Cir. 1997) .......... 9, 12, 16

Strahan v. Sec'y, Mass. Off. of Energy & Env't Affs. (Strahan II),
458 F. Supp. 3d 76 (D. Mass. 2020) .......... 9, 12, 16

Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,
535 U.S. 635 (2002) .......... 19

Ex Parte Young,
2019 U.S. 123 (1908) .......... 18

## RULES

Fed. R. Civ. P. 56(e)(2) ........ 2

Fed. R. Civ. 56(a) ........ 2, 8

Local Rule 7.1(e)(2) ........ 2

## INTRODUCTION

State Defendants and Intervenors (collectively "Defendants") fail to rehabilitate Idaho's recreational wolf-trapping and snaring rules, which violate the ESA because they are reasonably likely to cause the incidental take of grizzly bears. State Defendants' expert admissions are conclusive, conceding or failing to rebut that: (1) the baits and lures used by recreational wolf trappers in Idaho attract grizzly bears from long distances; (2) Idaho-permitted wolf traps and snares can and do capture grizzly bears; (3) Idaho's wolf-trapping and snaring rules do not prevent grizzly bear take; and (4) Defendants' proffered non-mandatory trap and snare modifications do not reduce take. Defendants largely ignore these concessions and instead mischaracterize the region's 25 reported non-target grizzly bear captures and Idaho's 75 black bear captures as somehow irrelevant. State Defendants' procedural defenses regarding standing, Eleventh Amendment immunity, and vicarious liability fare no better because they confuse the law and impermissibly rely on State Defendants' flawed merits conclusions.

Defendants focus on whether State Defendants may be held liable for past grizzly bear take. But that is not the issue. Instead, this Court must determine whether traps and snares set in compliance with Idaho's wolf-trapping and snaring rules are reasonably likely to take grizzly bears in the future. See Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc., 23 F.3d 1508, 1511 (9th Cir. 1994) (holding injunctive relief proper when "a violation of the ESA is at least likely in the future"); Ctr. for Biological Diversity v. C.L. Otter, No. 1:14-CV-258-BLW, 2016 WL 233193 at *8 (D. Idaho Jan. 8, 2016) (same). Based on State Defendants' expert admissions, Plaintiffs' expert testimony, and the substantial evidence of prior takings (including injury and mortality), future grizzly bear take is likely.

## I. STATE DEFENDANTS' EXPERT ADMISSIONS DEMONSTRATE FUTURE GRIZZLY BEAR TAKE IS LIKELY.

The many factual admissions made by State Defendants' own expert witnesses demonstrate that Idaho's wolf-trapping rules violate the ESA. As Plaintiffs previously explained, Pls.' Br. 5–12, State Defendants' experts have admitted that the baits and lures used by wolf trappers attract grizzly bears; State-allowed wolf traps and snares can take grizzly bears; Idaho's rules are inadequate to prevent grizzly bear take; and the mostly voluntary equipment modifications recommended by State-Defendants' experts do not prevent take. Defendants offer no proper rebuttal to State Defendants' admissions, and they have thus conceded them as undisputed fact. See Fed. R. Civ. P. 56(e)(2) (if a party "fails to properly address another party's assertion of fact," courts may consider that fact undisputed); see also Local Rule 7.1(e)(2) (same). Together, these admissions support Plaintiffs' expert conclusions that recreational wolf trappers are likely to capture grizzly bears in Idaho. Third Proulx Decl. ¶ 26; Third Niemeyer Decl. ¶ 9; Second Vickers Decl. ¶ 11; see Third Servheen Decl. ¶¶ 12, 16. This Court should therefore grant Plaintiffs' motion for summary judgment because the undisputed facts show that Idaho's recreational wolf-trapping and snaring rules violate the ESA. See Fed. R. Civ. 56(a); Ctr. for Biological Diversity, 2016 WL 233193 at *4 (state-authorized trapping violates the ESA when it is likely to cause future take of protected species).

### A. Intervenors Fail to Create a Genuine Issue of Fact—Baits and Lures Attract Grizzly Bears to Wolf Traps and Snares.

The baits and lures Idaho permits for use by recreational wolf trappers attract grizzly bears from long distances. State Defendants concede this fact outright, while Intervenors resist only with respect to urine lures. However, Intervenors fail to create a genuine issue of material fact because their arguments rely solely on non-expert and self-contradictory opinions that are also inconsistent with real-world evidence.

As one of Plaintiffs' experts described, "[t]rappers almost always use bait or scented lures (such as urine, anal lands, or ground up meat)" and "[a]ny bait or lure that will attract a wolf will also attract grizzly bears." Third Niemeyer Decl. ¶ 28; see also Third Servheen Decl. ¶ 13 (noting wolf baits and lures attract grizzly bears); Second Vickers Decl. ¶ 13 (same); Third Proulx Decl. ¶ 23 (same). Indeed, State Defendants' experts admitted that the baits used in wolf trapping would actively attract grizzly bears because "bears are curious individuals and food is important to them." Boudreau Dep. 114:9–15; see Oelrich Dep. 28:3–8 ("Q. Would grizzly bears be attracted [to bait like an elk carcass]? A. Yes."). Further, State Defendants do not dispute that urine lures similarly attract grizzly bears, as they do not contest the fact in briefing or their Statement of Disputed Facts. Compare Pls.' SOF ¶ 10 (Dkt. 53) ("Baits and lures will attract grizzly bears from long distances"), with Defs.' SODF ¶ 10 (Dkt. 61) (failing to dispute that assertion); see generally State Defs.' Br. (also failing to dispute that baits and lures attract bears).

Intervenors do not dispute that wolf baits attract grizzly bears but argue in their Statement of Disputed Facts that bears are not attracted to urine lures. (See Dkt. 67-1 ¶ 10.) Intervenors' disagreement regarding urine lures, however, creates no genuine dispute of fact because it relies entirely on non-expert opinions. See id. (relying on non-expert declarations of Kramer, Webb, Ward). Moreover, Intervenors' argument contradicts a prior statement by Mr. Kramer and the Idaho Trappers Association that "no lure or urine used [for wolf trapping] will not attract grizzly bears." (Dkt. 54, Ex. 10 (Facebook post).) Such contradictory and non-expert statements are not sufficient to bring the expert testimony of Plaintiffs' experts into dispute. Martinez v. United States, No. 2:21-cv-03735-FWS-MAR, 2022 WL 17078646 at *5 (C.D. Cal. Nov. 2, 2022) (holding that a party's "non-expert opinion does not create a genuine issue of material fact") (collecting cases); N. Cal. Collection Servs. Inc. of Sacramento v. Cent. Sierra Constr., Inc., 370

F. App'x 774, 775 (9th Cir. 2010) ("[A]mbiguous and self-contradictory evidence is insufficient to raise a genuine issue of material fact."). Intervenors' non-expert assertions are further contradicted by real-world evidence from Idaho: In 2012, an IDFG wolf trapper inadvertently captured a grizzly bear in a wolf leghold trap after relying exclusively on wolf urine as a lure. (Dkt. 19-1, Ex. A.) In sum, there is no genuine issue of material fact: the baits and lures that Idaho permits for recreational wolf trapping also attract grizzly bears from long distances.

**B. Defendants Cannot Rebut that Wolf Traps and Snares Threaten Grizzly Bear Capture.**

Wolf leghold traps take grizzly bears due to the traps' large size, and wolf snares also take grizzly bears due to their size and the height at which they are generally set. State Defendants' expert admissions demonstrate that wolf leghold traps capture grizzly bears, and their experts' mutually incompatible statements regarding wolf snares made during their depositions—one asserting that grizzly bears carry their heads above, and the other that grizzly bears carry their heads below the height of wolf snares—does not create a genuine issue of fact.

Plaintiffs noted that the most important variable when considering the potential for grizzly bear take in wolf leghold traps is size. Pls.' Br. 6; see Third Proulx Decl. ¶ 8; Third Niemeyer Decl.; ¶¶ 21, 39. Plaintiffs also described that State Defendants' expert, Mr. Boudreau, admitted that even wolf leghold traps smaller than nine-inch traps permitted in Idaho, can capture—and have already captured—grizzly bears in Idaho. Pls.' Br. 6; see Boudreau Dep. 29:15–18 ("Q. Is an MB-750 [which has an inside jaw spread of 7 1/16 inches] capable of capturing a grizzly bear? A. There's one instance of an MB-750 catching and holding a grizzly bear that I know of."); see also Third Niemeyer Decl. ¶ 13 (recalling an incident in which a Wildlife Service's employee "accidentally trapped a yearling grizzly bear in a … wolf trap with a jaw spread of approximately 6 inches" in 1987). And Plaintiffs' experts declare that wolf

leghold traps up to nine inches in size can capture grizzly bears. Third Niemeyer Decl. ¶¶ 9, 11 ("Foothold traps with a 9-inch jaw spread are large enough to capture grizzly bears."); Third Proulx Decl. ¶ 10 ("[T]raps with a jaw spread of 9 inches or less may clamp bears just behind their toes."); Second Vickers Decl. ¶13 ("[T]raps with a jaw spread of up to nine inches … [are] large enough to capture … grizzly bears."). Indeed, FWS—the federal agency charged with managing grizzly bears—concluded that expert Wildlife Services trappers in Idaho are likely to capture grizzly bears in wolf traps, even when using traps smaller than eight inches. (Dkt. 54, Ex. 8 at 102 (2014 FWS BiOp) (noting that Wildlife Services use wolf traps "normally <8inches"); id. 107 (concluding take is likely).) Against this weight of expert testimony and admissions, State Defendants assert only that, when trapping for grizzly bears was legal, trappers used larger traps. State Defs.' Br. 16. However, this evasive response fails to dispute that wolf traps with an inside jaw-spread of less than nine inches can and do capture grizzly bears.

With respect to wolf snares, Mr. Boudreau states that "the most important thing about limiting nontargets is actually the height at which you set the bottom of [the] wire, [and] your choice of cable." Boudreau Dep. 30:15–17. And on this subject, FWS has stated in its 2014 biological opinion on Wildlife Services trapping in Idaho that wolf snares "are set with an appropriate loop size and at an appropriate height" to capture grizzly bears. (Dkt. 54 at 104.) And though Plaintiffs noted this expert-agency assertion in briefing, neither State Defendants nor Intervenors acknowledge or explain this critical conclusion. See generally State Defs.' Br.; Ints.' Br.; see also State Defs.' SODF ¶ 9 (discussing wolf snares but not FWS assertion); Ints.' SODF ¶ 9 (same). Instead, State Defendants assert insufficiently that trappers have "choices" when deciding the height at which to set a wolf snare. State Defs.' SODF ¶ 9.

In the same vein, Defendants also fail to acknowledge or explain State Defendants' internal expert dispute about the dangers posed to grizzly bears by wolf snares. As Plaintiffs described, Pls.' Br. 7–8, n.4, State Defendants' two experts reach polar-opposite conclusions about whether wolf snares threaten grizzly bear take due to the height at which they are generally set, with Mr. Boudreau stating that grizzly bears travel with their heads below the height of wolf snares, Boudreau Dep. 77:18–24, while Ms. Oelrich states that grizzly bears travel with their heads above wolf snares, Oelrich Dep 117:21–23. These conflicting assertions merely affirm the common-sense statement by Dr. Servheen—former FWS grizzly bear recovery coordinator and a Ph.D. biologist—that grizzly bears "have their head in many positions as they travel." Fourth Servheen Decl. ¶ 7. Intervenors' bare assertion that "[a]ppropriate loop size and placement relative to the ground prevents a snare from capturing a non-target animal," Ints.' Br. at 12, fails to create any genuine issue of fact because it relies entirely on Mr. Boudreau's statement, which Mr. Boudreau admits is not based on peer-reviewed studies or data of grizzly bear movement. See Boudreau Dep. 50:1–17; Stephens v. Union Pac. R.R. Co., 935 F. 3d 852, 856–57 (9th Cir. 2019) ("Expert testimony cannot create a genuine issue of material fact if it rests on assumptions that are not supported by evidence.").

**C. Even State Defendants' Expert Agrees—Idaho's Rules Fail to Prevent Take.**

As Plaintiffs described, Pls.' Br. 8, even State Defendants' expert conceded during deposition that Idaho's wolf-trapping rules fail to prevent grizzly bear take: "Q. Do Idaho's regulations, wolf trapping regulations, by themselves limit nontarget captures? A. No." Boudreau Dep. 25:4–6. Despite this significant admission, Defendants make no effort to contradict or explain this statement or in any way respond to Plaintiffs' discussion of it. That Idaho's trapping rules do not prevent grizzly bear take is thus undisputed.

### D. Defendants' Experts Admit Recommended Equipment Modifications Fail to Reduce Take and are Also Voluntary and Unenforceable.

Even the wolf-trap and snare modifications recommended by Defendants' experts would not reduce take—and they are mostly voluntary. Wolf traps and snares remain indiscriminate.

At his deposition, Mr. Boudreau stated that his conclusion that grizzly bear take in recreational wolf traps is unlikely relies, in part, on the type of equipment used by trappers. Mr. Boudreau stated that limiting non-target captures is "about the sum total of all the tools that you have, all the equipment that you have, all the knowledge that you have, that helps trappers avoid catching non-target species." Boudreau Dep. 24:25–25:3.[1] In particular, Mr. Boudreau points to laminated jaws and offset jaws for leghold traps, and breakaway devices and loop stops on wolf snares. Second Boudreau Decl. ¶¶ 10–13. Nevertheless, as Plaintiffs have described, Pls.' Br. at 8–9, Mr. Boudreau admitted at deposition that these modifications do not prevent grizzly bear capture (in other words, unlawful take). Boudreau Dep. 79:21–23 ("Q. Would an offset jaw prevent a grizzly bear from being captured by itself? A. No."); id. at 76:14–16 ("Q… Does a breakaway device stop a grizzly bear from becoming ensnared in the first instance? A. No."); id. at 77:7–10 ("Q. Does a loop stop by itself prevent a grizzly bear from being captured? A. No. Unless it was a foot catch, unless the snare had fallen down.").

Not only do such modifications fail to prevent grizzly bear take, but their use is also generally voluntary under Idaho's rules. Mr. Boudreau admitted that the use of traps with

[1] State Defendants' additional reliance on trapper education—16 hours of classroom activity during which attendees may never set a trap or snare, Boudreau Dep 40:21–24—is also misplaced, see State Defs.' Br. 17. IDFG data show that recreational trappers holding wolf tags self-reported capturing non-target species 47 percent of the time. (Dkt. 54 at 168–70); see also Pls.' Resp. to State Defs.' Appx. of Evid. Obj., Resp. 2 (establishing admissibility of evidence). IDFG data further show all recreational trappers self-reported capturing over 4,500 non-target animals over the past 9 years. Williams Decl. ¶ 2.

laminated and offset jaws is not required. Boudreau Dep. 59:11–13 (Q. "Are laminated offset jaws required when wolf trapping? A. No."). Mr. Boudreau also acknowledged that "a breakaway or a stop is required in the loop of a snare set for wolves," but not both. Id. at 62:21–22. He further admitted that Idaho's rules place no requirements for breakaways or stops. Id. at 62:25–63:6 ("A. … breakaways … start at 100 pounds and go up. Our recommendation is for 600 pounds. Q. Is that a requirement? A. No. Q. Is there a requirement? A. No."); id. at 62:11–13 (Q. Is there a requirement for how small that loop stop can close? A. No.").

In short, there is no genuine dispute of fact: baits and lures attract grizzly bears to wolf traps and snares from long distances; the size and placement of wolf traps and snares threaten grizzly bear take; Idaho's wolf-trapping and snaring rules do not prevent grizzly bear take; and even State Defendants' proffered voluntary equipment modifications do not prevent take. State Defendants' wolf-trapping rules violate the ESA, and these admitted facts confirm Plaintiffs' uniform expert opinion that recreational wolf trappers are reasonably likely to take grizzly bears even when fully complying with Idaho's rules. Third Proulx Decl. ¶ 26; Third Niemeyer Decl. ¶ 9; Second Vickers Decl. ¶ 11; see Third Servheen Decl. ¶¶ 12, 16. Summary judgment is warranted because the undisputed facts show that Idaho's recreational wolf-trapping and snaring rules violate the ESA. See Fed. R. Civ. 56(a); Ctr. for Biological Diversity, 2016 WL 233193 at *4 (state-authorized trapping violates the ESA when it is likely to cause future take of protected species).

## II. PRIOR TRAPPING AND SNARING INCIDENTS DEMONSTRATE THAT FUTURE TAKE IS LIKELY.

As Plaintiffs discussed, Pls.' Br. 12–19, reports from various jurisdictions demonstrate that expert and recreational trappers have captured 25 grizzly bears in the region over the last 30 years, including numerous injuries and mortalities. IDFG data further show approximately 75

black bears captured, injured, or killed in traps and snares in Idaho since 2012. Defendants dismiss these incidents as irrelevant, but because past takings are "instructive, especially if there is evidence that future similar takings are likely," each of these incidents supports the uncontested expert testimony and admissions that wolf traps and snares threaten grizzly bear take. Burlington N. R.R. Inc., 23 F.3d at 1512; see Strahan v. Coxe (Strahan I), 127 F.3d 155, 164–65 (1st Cir. 1997) (holding future take of Northern Right whales likely based on evidence of eleven prior entanglements in Massachusetts-licensed fishing gear between 1978 and 1995).

Evidence of grizzly bear capture from jurisdictions neighboring Idaho is instructive. See Strahan v. Sec'y, Mass. Off. of Energy & Env't Affs. (Strahan II), 458 F. Supp. 3d 76, 95 (D. Mass. 2020) (holding future take in Massachusetts likely based on evidence of one prior entanglement in Massachusetts waters together with abundant evidence of entanglements from other jurisdictions). And the substantial number of black bear captures in Idaho further demonstrates that grizzly bear take is also likely. See Animal Welfare Inst. v. Beech Ridge Energy, 675 F. Supp. 2d 540, 578–79 (D. Md. 2009) (holding evidence of wind turbines taking one bat species instructive when considering likelihood of future take of another bat species).

### A. Defendants Distract from the Instructive Value of Prior Takings in Idaho.

Three grizzly bears have been reported taken in wolf traps and snares in Idaho since 2012. Pls.' SOF ¶ 16. While Defendants reject these takings as irrelevant because they do not involve lawful recreational wolf sets, State Defs.' Br. 7–9; Ints.' Br. 8–10, this assertion misses the point: at issue is not whether State Defendants may be held liable for prior takings, but instead whether these past incidents are instructive when considering future take. They are; Defendants' attempts to distinguish facts cannot overcome the probative value of these takings.

In 2012, a professional IDFG research trapper accidentally caught a grizzly bear in a wolf leghold trap in the Caribou-Targhee National Forest. Aber Decl. ¶ 4 (Dkt. 19-1). Defendants

confirm that Idaho rules permit recreational wolf trappers to use the offending trap—an MB-750. See Third Boudreau Decl. ¶ 17 (recommending use of MB-750). Indeed, Defendants cannot contest that the MB-750 is one of the smaller traps used to target wolves, with a jaw spread of just 7 1/16 inches compared to the maximum permitted nine-inch traps. (See Dkt. 60-1 at 11) (recreational wolf-trapping rules permitting nine-inch traps).) Instead, State Defendants argue only that the incident occurred during a time when recreational wolf-trapping was closed in the area. State Defs.' Br. 8. This argument fails to acknowledge that Idaho's wolf-trapping rules permit recreational wolf trapping and snaring in grizzly bear habitat during the active grizzly bear season on public lands and year-round on private lands. (Compare Dkt. 54, Ex. 5 at 86 (draft 2022 FWS BiOp) (defining the grizzly bear non-denning season in Idaho as March 1 to November 30), with Dkt. 60-1 at 14–15 (recreational wolf-trapping rules) (permitting wolf snaring from November 15 to March 31 and foothold trapping as early as September 10 on public lands and year-round on private lands)); see also Pls.' Br. 13–14 (explaining grizzly bears may remain active well into December). Thus, this incident—trivially distinguishable by the date on which it occurred—demonstrates the likelihood of future, similar take by recreational wolf trappers even when fully complying with Idaho's rules.

Defendants further err in dismissing the two grizzly bears killed in wolf-snaring incidents in north Idaho in 2020. Defendants state that this Court should not consider the first incident because it involved "an action subject to state and federal criminal prosecution." State Defs.' Br. 8. However, this incident remains instructive: while it occurred on private lands during a time when snaring is prohibited, it nevertheless illustrates the inadequacy of Idaho's season restrictions because—as Defendants do not contest—Idaho's rules now permit recreational wolf trappers to set leghold traps on the same date in the location of this incident. (See Dkt. 60-1 at 14

(recreational wolf-trapping rules) (permitting year-round wolf trapping on private lands).) While the snares in question may have been set too close to bait,[2] they did not violate any restrictions on loop size or height (as no such restrictions exist), illustrating that wolf snares are set at a height and with a loop size—factors deemed by Idaho's expert as "the most important thing about limiting non-targets," Boudreau Dep. 30:15–17—that threaten grizzly bear take. (See also Dkt. 54, Ex. 8 at 104 (2014 FWS BiOp) (noting that wolf snares "are set with an appropriate loop size and at an appropriate height" to take grizzly bears).) Finally, while the snares were not equipped with a loop stop or a breakaway device—only one of which is required—Defendants acknowledge that such devices have no bearing on whether a grizzly bear is captured (i.e. taken) by the neck in a wolf snare in the first place. Boudreau Dep. 76:14–16, 77:7–10. Thus, this incident illustrates the potential for future take in legally compliant wolf traps and snares.

Defendants similarly reject the evidentiary value of the second 2020 snaring incident in Idaho. Intervenors begin by stating incorrectly that it "could not be determined which species the snare was set for." Ints.' Br. 8–9. The case report written by the officer who investigated the bear states clearly that "the bear had a wolf snare around it[]s neck," (Dkt. 54, Ex. 16 at 178,) and there is no evidence to the contrary. Defendants' further assertion that the bear may have been snared in British Columbia, State Defs.' Br. 8; Ints.' Br. 8–9, is speculative and provides no basis for dismissing this incident when considering future take. While snaring location may be relevant in determining liability for past take, it does not change the probative value of this incident when considering the potential for future take—indeed, the fact that this incident could well have

[2] Indeed, the snares in question may not have violated Idaho's restrictions on bait proximity. Idaho's rules exclude "bleached bones and liquid scent" from the definition of bait, (Dkt. 60-1 at 11,) and the IDFG report for this incident notes that the snares were set near elk parts "reduced to bones." (Dkt. 54 at 174.)

occurred in either jurisdiction shows that wolf trapping threatens grizzly bears regardless of lines on a map. And though Defendants are correct that the snare in question lacked the required cable stop or breakaway device, this assertion again fails to acknowledge State Defendants' own expert admission that such devices are not adequate to prevent the take of grizzly bears. Boudreau Dep. 76:14–16, 77:7–10. This incident too is "instructive," demonstrating that future similar take is reasonably likely, even when trappers comply with Idaho's wolf-trapping rules. Burlington N. R.R. Inc., 23 F.3d at 1512; see Strahan I, 127 F.3d at 164–65 (considering past take).

### B. Defendants Provide No Compelling Reason to Dismiss Grizzly Bear Capture and Mortality from Other Jurisdictions.

Professional and recreational trappers have reported capturing 22 grizzly bears in Wyoming, Montana, British Columbia, and Alberta. Pls.' SOF ¶ 17–20, demonstrating that recreational wolf trappers are also likely to take grizzly bears in Idaho. Defendants object that this evidence from other jurisdictions is somehow irrelevant (or inadmissible) but offer no good reason to exclude these incidents from consideration. Indeed, FWS's conclusion that Wildlife Services trappers were likely to take grizzly bears in wolf traps and snares in Idaho rested largely on prior take in Wyoming and Montana. (Dkt. 54, Ex. 8 at 103 (2014 FWS BiOp).) And the court in Strahan II similarly considered evidence of Northern Right whale entanglements outside of Massachusetts when holding that Massachusetts regulations would cause unlawful take. 458 F. Supp 3d at 89–92. This Court should do the same.

Defendants do not object to evidence showing that expert Wildlife Services trappers had caught five grizzly bears in wolf leghold traps in Wyoming as of 2014, another in Montana in 2007, and killed a grizzly bear cub in a wolf snare in Wyoming in 2003. (Dkt. 54, Ex. 8 at 104–105.) And this Court should disregard State Defendants' objection to the admissibility of evidence demonstrating one additional Wildlife Services grizzly bear capture in a wolf leghold

trap on the Confederated Salish and Kootenai Tribe Flathead Reservation in 2012. See Third Servheen Decl., Ex. G (recording take); Pls.' Resp. to State Defs.' Appx. of Evid. Obj., Resp. 5 (establishing admissibility).

State Defendants discount all of these eight incidents because, "[u]nlike the agency trapper, a recreational trapper has full discretion to trap in Idaho where grizzly bears are not present." State Defs.' Br. 12. Their defense illustrates State Defendants' lack of meaningful regulation to prevent grizzly bear take, as recreational trappers can and do trap in grizzly bear habitat. State Defendants' subsequent argument that "wildlife damage control is distinct from recreational trapping because the trapping requires agency trappers to target particular animals at particular locations and times," id., fails for the same reason.[3] State Defendants thus fail to meaningfully distinguish recreational trapping from agency trapping, and their wing-and-prayer reliance on trappers voluntarily avoiding grizzly bear habitat fails in the absence of rules mandating such conduct. Animal Prot. Inst. v. Holsten, 541 F. Supp. 2d 1073, 1079 (D. Minn. 2008) (state authorities liable when "a risk of taking exists [even] if trappers comply with all applicable laws and regulations in place").

That Wildlife Services trappers capture grizzly bears in wolf traps and snares is particularly instructive because it demonstrates that even expert wolf trappers are incapable of avoiding grizzly bear take. See Red Wolf Coal. v. N.C. Wildlife Res. Comm'n, No. 2:13-CV-60-BO 2014, WL 1922234 at *8 (E.D.N.C. May 13, 2014) (holding that, where experts cannot

---

[3] Defendants also overlook that recreational trappers may themselves undertake damage control efforts. Indeed, IDFG has stated that Idaho rules "focus[] on providing hunters and trappers with additional tools to address conflicts between wolves, livestock and other big game." IDFG, F&G Commission Amends Wolf Hunting and Trapping Seasons to Align with New State Law (June 17, 2021), https://idfg.idaho.gov/press/fg-commission-amends-wolf-hunting-and-trapping-seasons-align-new-state-law.

discriminate, non-experts cannot be expected to do so). FWS concluded that expert federal trappers were likely to capture grizzly bears in wolf sets even when employing more protective measures than those required for recreational wolf trappers in Idaho. FWS prohibited Wildlife Services from using wolf snares in any Recovery Zone in Idaho from March 16 to November 30, a month shorter than the snaring season permitted for Idaho's recreational wolf trappers. (See Dkt. 54 at 104 (2014 FWS BiOp); Dkt. 60-1 at 14–15 (recreational wolf-trapping rules permitting recreational wolf-snaring from November 15 to March 31).) FWS required Wildlife Services trappers to employ specific leghold trap anchoring techniques to prevent grizzly bears from dragging traps away from trap sites, (Dkt. 54 at 103)—a precaution not mandated for recreational trappers in Idaho. FWS further noted that Wildlife Services generally employs wolf traps with an inside jaw spread of less than eight inches, id. at 102, significantly smaller than the nine-inch traps permitted for Idaho's recreational trappers. Defendants fail to explain how recreational wolf trappers—equipped with bigger traps and as little as 16 hours of classroom instruction—are better positioned than experienced agency trappers to make on-the-ground decisions to avoid grizzly bear take. The eight Wildlife Services incidents thus demonstrate the ongoing trapping danger to grizzly bears, which persists even for the most experienced trappers operating under stricter rules than Idaho's recreational trappers. Red Wolf Coal., 2014 WL 1922234, at *8.

Defendants also fail to recognize the import of the 14 grizzly bear captures by state and recreational trappers in Montana, British Columbia, and Alberta. State Defs.' Br. 10–13; Ints.' Br. 10–11. Montana officials have reported that three grizzly bears have been caught in wolf

leghold traps,[4] and four in coyote leghold traps since 2010. Third Niemeyer Decl., Ex. D. Additionally, a professional Montana Fish, Wildlife & Parks (FWP) trapper also caught a grizzly bear in a wolf leghold trap in 2015. Third Niemeyer Decl., Ex. F. In southern British Columbia, researchers noted "at least five" grizzly bear captures in wolf leghold traps between 2010 and 2020, (Dkt. 54, Ex. 9 at 116–17,) and in Alberta, at least one grizzly bear was caught and killed in a wolf snare in 2011, (Dkt. 54, Ex. 12 at 159). Defendants protest that evidence of these incidents is "not authenticated or lack details as to recreational versus agency trapping, trap type, set placement, timing, or location." State Defs.' Br. 10; see Ints.' Br. 10 (same). This is incorrect: the evidence for each incident is admissible, Pls.' Resp. to State Defs.' Appx. of Evid. Obj., Resps. 3, 5, 9, 10; the record of each incident identifies either a leghold trap or snare as the offending device; and each includes at least general geographic information. While the peer-reviewed scientific article identifying five grizzly bear captures in wolf leghold traps in British Columbia does not reveal the approximate timing of capture (unlike the Alberta and Montana incidents), that is irrelevant because Idaho allows recreational wolf trapping in grizzly bear habitat during the non-denning season. In sum, these prior takings are instructive when considering the potential for future similar take by recreational trappers in Idaho.

Defendants also argue that the Court should ignore prior takings from neighboring jurisdictions on the basis that other jurisdictions "are more densely populated and have greater

---

[4] One of the reported wolf-trapping incidents likely involved a coyote trap, while another is based on "unverified reports of a grizzly bear running around with a [presumed wolf] trap on its foot." Third Niemeyer Decl., Ex. D. These incidents are instructive because coyote and wolf traps are very similar except that "wolf traps are generally larger and stronger and therefore more likely to capture and injure a grizzly bear." Third Proulx Decl. ¶ 12. Unverified reports of a grizzly bear dragging a wolf trap are consistent with expert testimony that grizzly bears pull traps free from their anchors—many similar incidents likely go unreported. Third Niemeyer Decl. ¶¶ 15, 30; Third Proulx Decl. ¶ 4.

overlap with wolf populations." State Defs.' Br. 12. However, references to habitat overlap fail to rationally distinguish these trapping incidents because State Defendants do not dispute that wolf habitat in Idaho overlaps with grizzly bear habitat in multiple areas—and these are the only areas at issue in this litigation. FWS itself has relied on incidental grizzly bear take in Montana and Wyoming—where habitat overlap and grizzly bear density differ from Idaho—concluding "there is no reason to suggest [take] could not happen in Idaho," (Dkt. 54, Ex. 8 at 103,) and such take is indeed "likely" and "anticipated," id. at 107–08. Defendants provide no compelling reason to resist this same common-sense approach, and this Court should follow FWS's lead in considering evidence of prior take from other jurisdictions. See Strahan II, 458 F. Supp. 3d at 89–92 (considering take across jurisdictions). And because "past takings are indeed instructive," they demonstrate that future similar take is likely in Idaho. Burlington N. R.R. Inc., 23 F.3d at 1512; see Strahan I, 127 F.3d at 164–65 (considering past take).

### C. Evidence of Black Bear Capture and Mortality in Idaho Further Demonstrates the Trapping Danger to Grizzly Bears.

Past take of a similar species is evidence that take of an ESA-protected species is likely in the future. See Beech Ridge Energy, 675 F. Supp. 2d at 578–79. Defendants' own expert affirmed that black bears and grizzly bears generally "use the same habitats and they generally have the same type of food sources," Oelrich Dep. 47:12–16, and "move in generally the same way," id. at 48:19–20. Nevertheless, Defendants dismiss as irrelevant all prior black bear captures and mortalities in Idaho traps and snares but offer no good argument in support.

Since 2012, expert and recreational trappers in Idaho have caught approximately 75 black bears in traps and snares, including at least 25 in traps or snares that had been set for wolves, Pls.' SOF ¶ 24 (Dkt. 53). (IDFG has not confirmed the target animal for the other 50 captures and mortalities. Id.) Defendants' claim that grizzly bears are larger than black bears, with larger

feet and skulls, State Defs.' Br. 16, cannot salvage their position. State Defendants' own grizzly bear expert admits that traps with an inside jaw spread of only 7 1/16 inches can and do capture grizzly bears, Boudreau Dep. 29:15–18, and Idaho trappers are allowed to use traps with a spread of up to nine inches. Defendants' assertion that grizzly bear trapping used to involve 12 to 16-inch traps fails for the same reason, see State Defs.' Br. 16. Simply because someone actively targeting a grizzly bear might opt for a larger trap does not contradict the substantial evidence that nine-inch traps can and have captured grizzly bears. As to the size of grizzly bears' heads, Idaho rules place no limitation on snare loop size, (Dkt. 60-1 at 11–12), and FWS notes that wolf snares are "set with [the] appropriate loop size" to capture grizzly bears (Dkt. 54, Ex. 8 at 104 (2014 FWS BiOp).)

State Defendants also do not explain the relevance of their assertion that black bears are more broadly distributed and numerous than grizzly. State Defs.' Br. 16. Black bear capture data illustrates that, irrespective of trapper experience, wolf traps and snares capture bears when set in their habitat during the non-denning season. Third Servheen Decl. ¶ 17 ("[R]eports of fairly common black bear captures in wolf traps and snares [are] a window into the capture of grizzly bears in the same devices."); Proulx Decl. ¶ 11; Niemeyer Decl. ¶ 16. Defendants give no valid reason to dismiss evidence of black bear capture and mortalities showing that recreational wolf trappers are likely to take grizzly bears in wolf traps and snares. Beech Ridge Energy, 675 F. Supp. 2d at 578–79.

## III. STATE DEFENDANTS' REMAINING ARGUMENTS ON STANDING, IMMUNITY, AND VICARIOUS LIABILITY ARE MERITLESS.

State Defendants' hodgepodge of arguments related to standing, Eleventh Amendment immunity, and vicarious liability are unavailing because they misunderstand the law and further rely on State Defendants' flawed conclusions on the merits.

Plaintiffs have demonstrated Article III standing because Idaho's wolf-trapping rules cause "injury in fact" that is "fairly traceable to the challenged action" and likely to be "redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't Services, Inc., 528 U.S. 167, 180–81 (2000). Plaintiffs' interests in grizzly bears include religious, spiritual, conservation, aesthetic, recreational, inspirational, and scientific interests, which are harmed by grizzly bear capture, injury, and mortality in state-authorized wolf traps and snares. Rain Náhkòxho'óxeóó'èstse-Bear Stands Last Decl. ¶¶ 5–7, 8, 10, 13–16 (Dkt. 6-9); Haverstick Decl. ¶¶ 4–9, 11–12 (Dkt. 6-2); Macfarlane Decl. ¶¶ 4–6, 8 (Dkt. 6-3); Torline Decl. ¶¶ 2–6, 8–11, 14–16, 18–19 (Dkt. 6-4); Brown Decl. ¶¶ 4, 6–8, 10–11, 19–21, 27, 29, 31–32, 35 (Dkt. 6-5); Campbell Decl. ¶¶ 2–4, 6–7 (Dkt. 6-6); Almquist Decl. ¶¶ 2, 12–15, 18–22 (Dkt. 6-7); Sieracki Decl. ¶¶ 5, 7–13, 15–16, 21 (Dkt. 6-8); Stone Decl. ¶¶ 4–7 (Dkt. 6-10). Plaintiffs' injuries from future grizzly bear take are fairly traceable to State Defendants' conduct because "a risk of taking exists [even] when trappers comply with all applicable laws and regulations in place." Holsten, 541 F. Supp. 2d at 1079.[5] Finally, injunctive relief will redress Plaintiffs' injuries by halting recreational wolf trapping in grizzly bear habitat, thus eliminating the trapping risk posed to grizzly bears. State Defendants' standing arguments fail as they rely on their flawed merits conclusions and do not address numerous injuries to Plaintiffs members. State Defs.' Br. 18–19.

State Defendants' assertions of Eleventh Amendment immunity are similarly without merit. The doctrine of Ex Parte Young permits citizen suits in federal court against individual state officials. 2019 U.S. 123, 159–60 (1908). Plaintiffs meet the Ex Parte Young exception to

[5] Clapper v. Amnesty International, 568 U.S. 398 (2013), is not to the contrary. See State Defs.' Br. 18–19. The long chain of speculation regarding potential future government action in Clapper stands in stark contrast to this case, where State Defendants are already engaged in the conduct Plaintiffs challenge—namely, authorizing recreational wolf trapping and snaring in grizzly bear habitat during the non-denning season.

Eleventh Amendment immunity because they "allege[] an ongoing violation of federal law and seek[] relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). Nothing more is required. Id.

State Defendants' complaint that they cannot be held vicariously liable for the actions of recreational trappers also fails. As State Defendants readily acknowledge, "other circuits and lower courts have reached different conclusions to find vicarious liability for state-regulated trapping and fishing activities by private parties." State Defs.' Br. at 20–21. State Defendants provide no basis for departing from this established caselaw.

## IV. THIS COURT SHOULD GRANT THE REQUESTED INJUNCTIVE RELIEF.

This Court should enjoin State Defendants' authorization of wolf trapping and snaring in Idaho's Panhandle, Salmon, Clearwater, and Upper Snake regions.[6] Plaintiffs have demonstrated that recreational wolf trappers are likely to take grizzly bears in the future. Infra Pts. I–II. This take can result in grizzly bear mortality and injury as demonstrated by evidence of multiple grizzly bear mortalities in wolf snares, Pls.' SOF ¶¶ 16, 18, 20; injuries in snares and leghold traps, id. ¶ 22; Third Niemeyer Decl., Ex. D) (Montana FWP data) (documenting two grizzly bear toes found amputated in leghold trap); and the expert opinions of wildlife veterinarian Winston Vickers. Second Vickers Decl. ¶¶ 14–16, 18–21. Injunctive relief is therefore warranted. See Ctr. for Biological Diversity, 2016 WL 233193, at *8 (holding injunctive relief warranted upon a showing "that a violation of the ESA is at least likely in the future").

---

[6] State Defendants complain that the Salmon and Clearwater regions are "unoccupied," but acknowledge verified occurrences in both regions in recent years. State Defs.' Br. 5. These bears are "very vulnerable to human caused mortality," Servheen Decl. ¶ 9, and "highly vulnerable to being attracted to bait," id. at ¶ 10. A grizzly bear in Idaho's Bitterroot Ecosystem was drawn to bait and mistakenly killed by a black bear hunter in 2007. Id. FWS's 2021 Grizzly Bear Status Assessment notes "grizzly bears have been increasingly confirmed nearby and within" the Bitterroot. (Dkt. 54 at 59.) Accordingly, wolf trapping in these regions should be enjoined.

Defendants offer no compelling response, instead relying again on their flawed merits conclusions and State Defendants' erroneous assertion of Eleventh Amendment immunity. State Defs.' Br. 18–19, 21–22; Ints. Br. 7, 15. Intervenors' assertion that injunctive relief "would not be effective in preventing any past incidental capture of grizzly bears," Ints.' Br. 10, is irrelevant because "the injunctive relief authorized by the citizen suit provision [of the ESA] is by its very nature directed at future actions." Forest Conservation Council v. Rosboro Lumber Co., 50 F.3d 781, 785 (9th Cir. 1995). Their claim that injunctive relief requires a showing of past take is incompatible with the Ninth Circuit's clear position that the ESA "does not contain any requirement that claims of a future injury to wildlife be based on past injury." Id. at 785; Contra Ints.' Br. 6. Accordingly, this Court should grant Plaintiffs' requested injunctive relief. See Beech Ridge Energy, 675 F. Supp. 2d at 180 (enjoining construction and operation of wind turbines until receipt of incidental take permit); Ctr. for Biological Diversity, 2016 WL 233193, at *8, (granting injunctive relief upon finding future trapping of ESA-protected lynx was likely).

## CONCLUSION

The uncontested expert opinions and admissions, as well as the substantial evidence of prior take, demonstrate that State Defendants' authorization of wolf trapping and snaring in grizzly bear habitat violates the ESA because it is reasonably likely to cause unlawful grizzly bear take. To remedy this violation and prevent future take, including injury and mortality, Plaintiffs respectfully request this Court grant Plaintiffs' motion for summary judgment, deny Defendants' cross motions, and enjoin State Defendants' authorization of wolf trapping and snaring in grizzly bear habitat until Idaho seeks and obtains an incidental take permit from the U.S. Fish and Wildlife Service.

Respectfully submitted this 25th day of September, 2023.

/s/ Dana. M. Johnson
Dana M. Johnson, ID Bar # 8359
Wilderness Watch
P.O. Box 9765
Moscow, ID 83843
(208) 310-7003
danajohnson@wildernesswatch.org

*Counsel for Plaintiff Wilderness Watch*

/s/ Benjamin J. Scrimshaw
Benjamin J. Scrimshaw, *pro hac vice*
Shiloh S. Hernandez, *pro hac vice*
Emily T. Qiu, *pro hac vice*
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699 | Phone
bscrimshaw@earthjustice.org
shernandez@earthjustice.org
eqiu@earthjustice.org

*Counsel for Plaintiffs*