UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, FOOTLOOSE MONTANA, FRIENDS OF THE CLEARWATER, GALLATIN WILDLIFE ASSOCIATION, GLOBAL INDIGENOUS COUNCIL, THE HUMANE SOCIETY OF THE UNITED STATES, INTERNATIONAL WILDLIFE COEXISTENCE NETWORK, NIMIIPUU PROTECTING THE ENVIRONMENT, SIERRA CLUB, TRAP FREE MONTANA, WESTERN WATERSHEDS PROJECT, WILDERNESS WATCH, and WOLVES OF THE ROCKIES, | Case No. 1:21-cv-00479-CWD **MEMORANDUM DECISION AND ORDER** |

          Plaintiffs,

v.

BRAD LITTLE, Governor of Idaho; JIM FREDERICK, Director of Idaho Department of Fish & Game; and DERICK ATTEBURY, DAVE BOBBITT, GREG CAMERON, JORDAN CHEIRRETT, RON DAVIES, DON EBERT, TIM MURPHY, Members of the Idaho Fish and Wildlife Commission,

          Defendants,

And,

IDAHO TRAPPERS ASSOCIATION, NATIONAL TRAPPERS ASSOCIATION, and FUR TAKERS OF AMERICA, INC.,

          Defendant-Intervenors.

## INTRODUCTION

The Court has before it Defendants' Motion For Reconsideration,[1] Relief From Judgment, Alteration of Judgment, and Modification of Findings of Fact, and Defendant – Intervenors' Motion for Relief From Judgment, to Alter Judgment, and to Modify Findings of Fact. (Dkt. 99, 100.) Pursuant to Fed. R. Civ. P. 52(b), 59(e), and 60(b), Defendants ask the Court to vacate or amend its Memorandum Decision and Order, seeking reversal and withdrawal of the judgment entered in Plaintiffs' favor on cross-motions for summary judgment. (Dkt. 95, 96.)

The facts and legal arguments are adequately presented in the briefs and record. Because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion will be decided based on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons that follow, the Court will deny the motions.

## BACKGROUND[2]

Plaintiffs sought to enjoin Idaho's authorization of recreational wolf trapping and snaring in Idaho's grizzly bear habitat, which includes the Panhandle, Clearwater, Salmon, and Upper Snake regions, until Idaho obtains an incidental take permit from the United States Fish and Wildlife Service. Specifically, Plaintiffs challenged Idaho Senate

---

[1] Neither the Federal Rules of Civil Procedure nor the District of Idaho Local Civil Rules provide for a motion to reconsider. Nevertheless, the United States Court of Appeals for the Ninth Circuit instructs courts to treat motions to reconsider as motions to alter or amend under Federal Rule of Civil Procedure 59(e). *Sierra On–Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1419 (9th Cir. 1984).
[2] Because the facts are well known to the parties and the Court as reflected in the summary judgment related filings, they will not be recited in full here.

**MEMORANDUM DECISION AND ORDER - 2**

Bill 1211, passed and signed into law in May of 2021, and Defendants' continued authorization of recreational wolf trapping and snaring in grizzly bear habitat via the issuance of annual hunting proclamations.

The parties filed their respective cross-motions for summary judgment in August of 2023. (Dkt. 59, 66.) Plaintiffs asserted that Idaho's continued authorization and expansion of recreational wolf trapping and snaring in grizzly bear habitat was reasonably certain to cause the unlawful "take" of grizzly bears in violation of Section 9 of the Endangered Species Act, 16 U.S.C. §§ 1531 – 1544.[3] Defendants denied that Idaho's recreational wolf trapping laws, seasons, and rules caused a reasonably certain threat of imminent harm to grizzly bears.

Following a hearing, the Court carefully considered the parties' arguments, the voluminous record, additional documents, and supplemental authority that the parties submitted following the hearing. (Dkt. 85, 89, 90, 91, 92, 93, 94.) On March 19, 2024, the Court issued its memorandum decision and order, granting Plaintiffs' motion for summary judgment and denying Defendants' motions[4] for summary judgment. (Dkt. 95.)

The terms of the injunction as set forth in the Court's order follow:

1. Idaho Code § 36-201(3), which established a year-round recreational wolf trapping season on all private property, is enjoined.

2. The Director of the Idaho Department of Fish & Game and the Members of the Idaho Fish and Wildlife Commission are permanently enjoined from authorizing recreational wolf

---

[3] Grizzly bears in the lower 48 states are protected as a threatened species under the Endangered Species Act.

[4] The Idaho Defendants and Defendant-Intervenors filed separate motions for summary judgment.

**MEMORANDUM DECISION AND ORDER  - 3**

trapping and snaring on public or private land in grizzly bear habitat (which includes the Panhandle, Clearwater, Salmon, and Upper Snake regions) except during the time period when it is reasonably certain that almost all grizzly bears will be in dens—December 1 to February 28—unless an ITS is obtained from the Director of Fish and Wildlife Services.

The practical effect of the injunction shortens the recreational wolf trapping season on public land by 46 days and ensures trapping on private land comports with the same temporal restriction.[5]

## LEGAL STANDARDS

There are four basic grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which the judgment rests; (2) to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). A "manifest injustice" is defined as "an error in the trial court that is 'direct, obvious, and observable.'" BLACK'S LAW DICTIONARY, 11th Ed., 2019. "A manifest error of fact or law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *In re Wahlin*, 10-20479-TLM, 2011 WL 1063196, at *2 (Bankr. D. Idaho Mar. 21, 2011); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (Clear error is found when "the reviewing court on the entire record

---

[5] The Idaho Department of Fish and Game prohibited wolf trapping in the counties affected by the Court's injunction between March 1 – November 30 commencing with the 2024 – 2025 trapping season. For all other counties, the Idaho Department of Fish and Game did not change its various trapping seasons. *See* Idaho Fish and Game, Big Game Seasons and Rules Brochure, 2024 Big Game Seasons & Rules, https://idfg.idaho.gov/rules/big-game, click on Gray Wolf Seasons. [https://perma.cc/A77A-YJZ6].

is left with the definite and firm conviction that a mistake has been committed.") (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Rule 59 is not intended to provide litigants with a "second bite at the apple." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). Motions to reconsider are requests for an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). The high bar that movants must overcome to prevail on a motion for reconsideration reflects the courts' "concerns for preserving dwindling resources and promoting judicial efficiency." *Costello v. United States Gov't*, 765 F.Supp. 1003, 1009 (C.D. Cal. 1991). A losing party cannot use a Rule 59(e) motion to relitigate old matters or to raise arguments that could have been raised before the entry of judgment. *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A party seeking reconsideration must show "more than a disagreement with the [c]ourt's decision." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069-1070 (E.D. Cal. 2009).

Under Rule 60(b), a court may grant a party relief from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Rule 60(b), like Rule 59(e), should be used "sparingly as an equitable remedy to prevent manifest injustice" and only if the movant shows "extraordinary circumstances" justifying relief. *Lal v. California*,

610 F.3d 518, 524 (9th Cir. 2010) (citing *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)).[6] *See also Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005); *United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996).

## DISCUSSION

Defendants argue reconsideration is necessary to correct clear errors of law and fact upon which the decision was based, and to prevent manifest injustice. Defendants request that the Court vacate the judgment and find in their favor. Plaintiffs oppose the motions, arguing Defendants have not shown a proper basis for reconsideration because the Court correctly applied the law to the undisputed, material facts.

The Court has reviewed the parties' arguments on this motion, as well as the materials filed with the cross-motions for summary judgment, its prior Memorandum Decision and Order, and the entire record herein. Having done so, the Court finds that Defendants are rearguing the same issues and law already presented to and decided by the Court, and they are presenting new evidence which could or should have been raised earlier. Therefore, Defendants have not shown a proper basis for reconsideration under either Rule 59(e) or 60(b). *See e.g.*, *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1129 (E.D. Cal. 2001) ("[A] motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before…a party

---

[6] Idaho Defendants also cite Fed. R. Civ. P. 52(b). Mem. at 3. (Dkt. 99-1.) Rule 52, by its terms, does not apply here, because the Court did not try this matter on the facts without a jury. Fed. R. Civ. P. 52(a). Contrary to Idaho Defendants' assertion, the Court did not issue "findings of facts and conclusions of law." Mem. at 3. (Dkt. 99-1.) Rather, the Court decided the matter on cross-motions for summary judgment, and determined the material facts to which there was no genuine dispute. Fed. R. Civ. P. 56(a).

seeking reconsideration must show more than a disagreement…and recapitulation of the cases and arguments [already] considered by the [C]ourt".) (cleaned up).

Defendants' mere disagreement with the Court's factual findings, the inferences drawn from them, and the ruling in this case presents neither highly unusual nor extraordinary circumstances warranting the relief afforded under Rule 59(e) or 60(b). For these reasons, as explained more fully below, Defendants' motions will be denied.

## 1.    Application of the Law

It was Plaintiffs' burden on their motion for summary judgment to establish a reasonably certain threat of imminent harm to grizzly bear exists even when traps and snares are lawfully set pursuant to Idaho's laws, seasons, and rules, and that there was an absence of evidence to support the contrary conclusion. Defendants' burden was the inverse of Plaintiffs' burden. The Court, applying all inferences in Defendants' favor to the undisputed, material facts, found that Plaintiffs met their burden, and Defendants did not. Mem. at 35 – 41. (Dkt. 95.)

Defendants do not dispute the applicable legal standards. Def.s' Mem. at 7. (Dkt. 99-1.)[7] Section 9 of the ESA requires a showing of a "reasonably certain threat of

---

[7] The Court cites the Idaho Defendants' memorandum, but notes also that Intervenor-Defendants do not dispute the applicable legal standard under the ESA. The Idaho Defendants assert the Court misapplied *Humane Soc'y of United States v. Kienzle*, No. 16-CV-0724 WJ/SMV, 2017 WL 5151305, at *1 (D.N.M. Nov. 2, 2017), because the Court relied upon the standard applicable pursuant to Fed. R. Civ. P. 12(c), leading to an "erroneous framing of the relevant inquiry at summary judgment in this case." Mem. at 16. (Dkt. 99-1.) Defendants overlook, however, that the Court cited *Kienzle* together with citations to *Red Wolf Coalition*, *Holsten*, and *Beech Ridge Energy*, which set forth the standard that the Court applied. *Mem.* at 34 – 35. (Dkt. 95.)

imminent harm to a protected species" for an injunction to issue. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1193 (9th Cir. 2024) (quoting *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996), *as amended on denial of reh'g* (June 26, 1996)). Imminent is defined as "ready to take place."[8] But it is not required that future harm be shown with certainty before an injunction may issue; the Court simply must find that "a future injury [will] be sufficiently likely." *Flathead-Lolo*, 98 F.4th at 1193 (quoting *Nat'l Wildlife Fed'n v. Burlington N. R.R. Inc.*, 23 F.3d 1508, 1512 (9th Cir. 1994)). This means the Court must find a definitive threat of future harm to a protected species, not "mere speculation" of harm. *Id.* (quoting *Burlington N. R.R.* at 1512 n.8).

The liability determination depends on whether a risk of taking exists if trappers comply with all applicable laws and regulations in place, not whether it is possible to avoid a taking if the laws and regulations are followed. *Red Wolf Coalition v. N. Carolina Wildlife Res. Comm'n*, No. 2:13-cv-60-BO, 2014 WL 1922234 *8 (E.D.N.C. May 13, 2014); *Animal Prot. Inst., Ctr. for Biological Diversity v. Holsten*, 541 F. Supp. 2d 1073, 1079 (D. Minn. 2008); *Flathead-Lolo-Bitterroot Citizen Task Force*, 703 F.Supp.3d 1229, 1239 (D. Mont. 2023).[9] *See also Strahan v. Coxe*, 127 F.3d 155, 164 (1st Cir. 1997) (finding that it was "not possible for a licensed commercial fishing operation to use

---

[8] https://www.merriam-webster.com/dictionary/imminent
[9] The United States Court of Appeals for the Ninth circuit affirmed the district court's issuance of injunctive relief, but remanded for reconsideration of the geographic scope of the injunction. *Flathead-Lolo*, 98 F.4th 1180

its gillnets or lobster pots in the manner permitted by the [State] without risk of violating the ESA by exacting a taking.").

The Court found the material facts undisputed. *See* Fed. R. Civ. P. 56(a) (Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."). Undisputed evidence in the record established that experts and recreational trappers alike acknowledged that take of a grizzly bear in a wolf trap or snare, lawfully set or otherwise, is possible, and is more than mere speculation. *See* Idaho's Reply at 6. (Dkt. 108.) The Court relied upon undisputed evidence, submitted by Defendants, that Idaho's recreational wolf trapping and snaring laws, seasons, and rules will not prevent non-target capture of grizzly bears in wolf traps and snares, and that, despite equipment recommendations and modifications, grizzly bears may be caught in traps and snares set in accordance with Idaho's laws, seasons, and rules.[10] *See also*, *Flathead-Lolo*, 98 F.4th at 1193 (in Montana, grizzly bears have been caught in traps targeted at other animals, and have been seen in Montana with injuries – missing claws and toes and missing lower leg – likely caused by traps). Instead, the Court concluded

---

[10] Trappers Webb and Ward admitted that a grizzly bear could be caught in a snare. Webb Decl. ¶ 13; Ward Decl. ¶ 14 – 18 (Dkt. 66-4.) Idaho's expert, Toby Boudreau, confirmed that Idaho's recreational trapping and snaring laws and rules will not prevent nontarget captures of grizzly bears in wolf traps. Boudreau Dep. 27:14-17; Boudreau Decl. ¶ 3 – 4 (Dkt. 50-10; 60-2.) The recommended MB-750 trap is capable of capturing a grizzly bear. Boudreau Dep. 29:10 – 21, 30:3 – 5; 80:3 – 12 (Dkt. 52-10.) Idaho also does not dispute that grizzly bears have been captured in traps smaller than 9 inches. Pl. SOF ¶ 8; ID SODF ¶ 8. (Dkt. 53, 61.) Snares set to target gray wolves may also capture a grizzly bear. Second Boudreau Decl. ¶ 17 (stating snares are "not likely" to capture a grizzly bear) (Dkt. 60-2.) Equipment modifications to snares, such as loop stops and breakaway devices, will not reduce the likelihood of recreational wolf trappers from capturing a grizzly bear. Boudreau Dep. 49:16–19; 77:7–11; Second Boudreau Decl. ¶ 50; Niemeyer Discl. ¶ 21; Proulx Discl. ¶ 15; Vickers Discl. ¶¶ 12–13. (Dkt. 52-10, 60-2, 68-3, 68-5, 68-7.)

Defendants' evidence merely established that it was possible to avoid a taking if recreational trappers followed Idaho's laws, seasons, and rules, and adequately exercised their discretion when trapping for wolves in grizzly bear habitat.

Idaho has also, by its own admission, incrementally increased the opportunities for recreational trappers to trap for wolves in grizzly bear habitat during periods when grizzly bears are known to be out of their dens. Upon the enactment of Idaho Code § 36-201, Idaho allowed wolf trapping to occur year-round on all private property. The proclamation for the 2023 – 2024 trapping season allowed recreational wolf trapping on public land between November 15 and March 31, which period overlaps with grizzly bear non-denning periods by 46 days. And, Idaho increased the ability of Idaho trappers to trap for wolves by permitting the purchase of an unlimited number of wolf tags. Based upon these facts, the Court correctly inferred that the risk of take is imminent.

Defendants contend that the Court mistakenly required Idaho to prove "zero risk" of take, contrary to Plaintiff's burden to show  a "reasonably certain risk of imminent harm." Mem. at 10. (Dkt. 99-1.) While the Court may have stated that "none of Idaho's witnesses avow that the risk of grizzly bear take is zero," the Court did not misapply the appropriate legal standard. The Court found that a rational fact finder could reasonably infer that it is not possible to set traps and snares in the manner Idaho permits without risk of violating the ESA by exacting a taking. *See Coxe*, 127 F.3d at 164.

For instance, Idaho did not refute that it was willing to risk take of grizzly bears with its "incremental" expansion of the ability of recreational trappers to trap for wolves. And, the Court does not have to wait for a reported take by an Idaho recreational trapper

**MEMORANDUM DECISION AND ORDER  - 10**

acting in compliance with Idaho's laws, seasons, and rules to find a reasonably certain threat of imminent harm. While evidence of past harm fitting that narrative is informative, it is not required. *Marbled Murrelet*, 83 F.3d at 1065 (rejecting the argument that an injunction may not issue until death or injury to a protected species has actually occurred). *See also Humane Soc'y of United States v. Kienzle*, 33 F.Supp.3d 1236, 1247 (D. N.M. 2018).

When considering risk, the scales are always tipped in favor of the endangered or threatened species. *Burlington N. R.R.*, 23 F.3d at 1510. Here, the facts were undisputed that, even if recreational trappers follow all of Idaho's laws, seasons and rules, a risk of grizzly bear take exists by virtue of the laws, seasons, and rules themselves. Idaho allows recreational trappers to trap for wolves in grizzly bear habitat during times when grizzly bears are known to be out of their dens.[11] And, Idaho allows the use of gear that can admittedly result in capture of grizzly bears.

Defendants failed to point to any jurisdiction permitting recreational trapping and snaring of wolves in grizzly bear habitat that successfully avoided the non-target capture of grizzly bears. Recreational wolf trappers routinely capture black bears, which occupy the same habitat as grizzly bears. *See, e.g., Animal Welfare Inst. v. Beech Ridge Energy LLC*, 675 F.Supp.2d 540 (D. Md. 2009) (finding evidence of death of other bat species killed at wind power projects persuasive evidence that protected bat species are likely to

---

[11] Montana arguably provides more protection to grizzly bears by utilizing a floating start date for recreational wolf trapping in occupied grizzly bear range. Nonetheless, the court in *Flathead-Lolo* found plaintiffs had shown a reasonably certain threat of imminent harm to grizzly bears should Montana's 2023 recreational wolf trapping season proceed as planned, despite the floating start date. 98 F.4th at 1187.

**MEMORANDUM DECISION AND ORDER  - 11**

be harmed).[12] Defendants criticize the Court for the inferences it drew from the facts. But disagreement with the inferences drawn from the undisputed facts is not a proper basis for reconsideration.

Defendants insist that the absence of grizzly bear take incident to lawful, recreational wolf trapping in Idaho for more than twenty years is dispositive of the question whether Idaho's recreational wolf trapping laws, seasons and rules pose an imminent threat of harm to grizzly bear. Mem. at 12, 14. (Dkt. 99-1.) Mem. at 3. (Dkt. 100-1.) Defendants thereby inversely conclude that Idaho's recreational wolf trapping laws, seasons, and rules do not pose a reasonably certain threat of imminent harm to grizzly bears solely because no grizzly bear has been reported captured incident to a lawfully set trap or snare in Idaho.[13] But the absence of take does not negate the causal relationship. Further, that is not how the Court must assess risk in the context of Section 9 of the ESA.

---

[12] The court made this inference even in the absence of evidence that no endangered Indiana bats were found killed. *Id.*

[13] Contrary to Idaho Defendants' argument, the Court does not find the 2018 *Kienzle* decision on summary judgment supportive of Defendants' position here. In that case, the court considered whether New Mexico's Cougar Rule, which authorized trapping of cougars, caused take of "experimental populations" of Mexican gray wolves under Section 9 of the ESA. *Humane Soc'y of United States v. Kienzle*, 333 F. Supp. 3d 1236, 1241 (D. N.M. 2018). However, vicarious liability does not attach under the special rules applied to experimental populations if "due care was exercised to avoid taking…." *Id.* at 1241. Applying this standard, the court found the following facts dispositive: no wolves had been reported caught in a trap set for cougars; regulations, if followed, minimized or avoided risk of injury to Mexican wolves; and cougars and wolves utilized different habitats. *Id.* at 1262. The court explained that this evidence materially disputed the plaintiffs' evidence that measures "cannot be taken to avoid trapping wolves in traps set for cougars…." *Id.* at 1262. Here, in contrast, the Court is not viewing causation through the lens of the standard applicable to experimental populations; therefore, the reasoning in *Kienzle* does not apply.

**MEMORANDUM DECISION AND ORDER - 12**

Risk means the possibility of harm. Here, based upon all of the undisputed facts before the Court in support of and in response to the parties' respective motions, the Court correctly found that the possibility, or risk, of grizzly bear take incident to a lawfully set trap or snare is reasonably certain. Indeed, upon reviewing 20 years of capture data from other jurisdictions, including Wyoming and Montana, FWS in its 2014 BiOp concluded there was "no reason to suggest [non-target capture of a grizzly bear] could not happen in Idaho." BiOp at 47 – 49. (Dkt. 68-6 at 127 – 129.)[14] Defendants fail to explain why FWS's conclusion is not equally applicable to the Court's risk assessment here.

Defendants have therefore not shown manifest error.

## 2.     Factual Findings.

Defendants claim the Court committed several errors in its factual findings. Mem. at 17 – 19. (Dkt. 99-1.) A manifest error is an error that is "plain and indisputable, and that amounts to a complete disregard of the…credible evidence in the record." *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (citing BLACK'S LAW DICTIONARY 563 (7th ed. 1999)). None of the factual errors identified by the Idaho Defendants rise to this level, if at all.

Preliminarily, the Court notes that summary judgment motions should not cause attorneys "to raise every objection imaginable without regard to whether the objections

---

[14] Nor does the Court find that the absence of incidental take of grizzly bears by USDA Idaho for more than twenty years definitively supports an inference in Defendants' favor. The 2014 BiOp and associated ITS has not been revised, rescinded, or otherwise changed despite the lack of incidental take. A rational trier of fact could reasonably interpret this evidence as indicative that FWS still believes incidental take is reasonably certain.

**MEMORANDUM DECISION AND ORDER  - 13**

are necessary, or even useful, given the nature of summary judgment motions in general, and the facts of their cases in particular." *Burch v. Regents of Univ. of California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006).

> Instead of objecting, parties should simply argue that the facts are not material. Similarly, statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context. *See, e.g., Smith v. County of Humboldt*, 240 F.Supp.2d 1109, 1115–16 (N.D. Cal. 2003) (refusing to rule on the evidentiary objections in defendant's reply because "even if the evidence submitted by plaintiff is considered by this Court, plaintiff fails to state a colorable claim"). Again, instead of challenging the admissibility of the evidence, lawyers should challenge its sufficiency.

*Burch*, 433 F.Supp.2nd at 1119.

Although a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, if the evidence may be presented in an admissible form at trial, a court may still consider that evidence. *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (considering evidence from a diary, notwithstanding the defendant's hearsay objections, in the context of a motion for summary judgment because the contents of the diary were "mere recitations of events within the [plaintiff/appellant's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways").

For the above reasons, the Court avoided addressing the plethora of objections raised by the Idaho Defendants, and did not delve into the battle of the experts. Instead, the Court focused on the undisputed facts Defendants introduced, and considered the

MEMORANDUM DECISION AND ORDER - 14

sufficiency of the evidence. *See* Mem. at 3. (Dkt. 95.) Further, implied from the Court's consideration of evidence objected to on hearsay grounds is that it may be presented in an admissible form at trial. Both the 2019 email that a grizzly bear was photographed in Idaho with an apparent neck snare wound or scar[15] and the reference to the grizzly bear caught in a snare designated for wolves that had depredated livestock in Alberta, Canada, in August of 2011[16] could be presented in admissible form at trial. Further, the Court referenced these facts as additional evidence. The 2019 email supported the inference that a grizzly bear can escape a snare's breakaway device, supporting the fact that a trapper may not report grizzly bear take. Mem. at 36. (Dkt. 95.) The 2011 reference to the grizzly bear caught in a snare designated for wolves established that neck snares designed to capture wolves can and do snare grizzly bears, a fact Defendants did not dispute. *See* note 10, supra.

The Court noted that Idaho's non-target capture data indicated 37 bears were caught, with no supporting data that the bears were black bears as opposed to grizzly bears. Mem. at 20, 37. (Dkt. 95) (noting that the report "simply says 'bear', with no indication whether it was a grizzly bear or black bear."). Idaho Defendants attempt now, at this late date, to introduce declarations from the trappers who reported the captures that state they caught black bears, not grizzly bears. Crea Decl.; Second Crea Decl.; Third Trever Decl. (Dkt. 99-2, 108-2, 108-3.) This evidence is not properly before the Court.

---

[15] *See* Mem. at 20. (Dkt. 95.) The email was authored by James Jonkel, Montana Fish, Wildlife & Parks.
[16] *See* Mem. at 20 (citing *Proulx et al.* 2015 at 60, Qiu Decl., Ex. 12. (Dkt. 54)). Pl.s' SOF ¶ 20; Def.s' SODF ¶ 20). (Dkt. 95.)

**MEMORANDUM DECISION AND ORDER  - 15**

*Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (a Rule 59(e) motion may not be used present new evidence for the first time when they could have reasonably been raised or presented earlier in the litigation.). Further, the Court was simply highlighting the inadequacy of Idaho's reporting, which Idaho did not deny. Oelrich Depo. at 76. ("[I]t would be nice to have better data....It would be nice to be able to separate out target species and---the species that the person was targeting versus what they caught...."). (Dkt. 52-11.)

Contrary to Defendants' assertions, the Court did not assume, for purposes of deciding the motions for summary judgment, that the reported captures were grizzly bears. Rather, the Court explained Defendants "cannot avoid the implications of *Beech Ridge*, where the court reasoned take of endangered Indiana bats was reasonably certain when other bat species were reported killed by wind turbines, and Indiana bats were present in the same location as the proposed wind turbine project." Mem. at 37. (Dkt. 95, citing *Beech Ridge Energy*, 675 F.Supp.2nd at 577). Defendants did not dispute that grizzly bears and black bears use the same habitat, and are both omnivores and look for food in similar ways. Oelrich Depo. at 47:9 – 49:21. (Dkt. 52-11.) As in *Beech Ridge*, the Court found this evidence persuasive.

Idaho objects to the Court's finding that foothold traps with a 9-inch inside jaw spread are capable of causing toe fractures and toe amputations in grizzly bears. Mem. at 15. (Dkt. 95.) Idaho contends the Court erroneously referenced the Niemeyer Declaration, and claim that Niemeyer was referring to small body-grip traps set for small furbearers, not traps meant for gray wolves. However, the Court referenced also the

Walrath Declaration. Nicole Walrath, DVM, Idaho's expert, stated she observed loss of toes in some cases related to venous return from foot and toe catches from use of foothold traps. Walrath Decl. ¶ 15, 19, 20. (Dkt. 60-3.)[17] Furthermore, Defendants did not dispute that grizzly bears have been captured in traps smaller than 9 inches, or that grizzly bears can break trap chains. Pl. SOF ¶ 8; ID SODF ¶ 8. (Dkt. 53, 61.) Third Proulx Decl. ¶¶ 15 – 16; Third Serveen Decl. ¶ 18. (Dkt. 68-5, 68-12.) The only rational inference from these facts is that grizzly bears, if captured by their toes, can escape, and potentially lose toes in the process.

Finally, Idaho objects to the Court's statement of fact that "trappers do not always report non-target captures and grizzly bears are able to break trap chains or cable snares and leave the site." Idaho contends that Plaintiffs "did not provide direct evidence of unreported take occurring in lawful sets in Idaho wolf seasons." Mem. at 19. (Dkt. 99-1.) Idaho's argument is an oxymoron—it is difficult for the Court to conceive how Plaintiffs would provide such direct evidence if trappers are not reporting illegal take in the first place. There was, however, evidence in the record, unrefuted by Defendants, that trappers do not always report non-target captures. Third Proulx Decl. ¶¶ 15 – 16; Third Serveen Decl. ¶ 18. (Dkt. 68-5, 68-12.) *See also Flathead-Lolo*, 98 F.4th at 1192 (noting that the parties presented evidence that unlawful grizzly bear killings are underreported). There was also evidence in the record, unrefuted by Defendants, that grizzly bears can break trap chains or cable snares and leave the site, leaving nothing to report.

---

[17] While Walrath attempted to downplay the likelihood that a foothold trap legal in Idaho would capture a grizzly bear by the toes, she did not deny that it could occur.

**MEMORANDUM DECISION AND ORDER - 17**

The remaining objections raised by Defendants concerning the two 2020 grizzly bear snarings and the non-target capture of grizzly bears by professional agency wolf trappers simply raise disagreements with the inferences the Court drew, and relate to the materiality of the evidence, not its admissibility.

In sum, none of the objections the Idaho Defendants raise rises to the level of manifest error.

**4.    Scope of Injunctive Relief**

Defendants contend the geographic scope of the Court's injunction is overbroad, because it enjoins "roughly half of Idaho without correlation to grizzly bear populations." Defendants assert that the occupied grizzly bear recovery zones in Idaho (the Greater Yellowstone, Selkirk, and Cabinet-Yaak) encompass a much smaller area in comparison to grizzly bear habitat, which includes the Panhandle, Clearwater, Salmon, and Upper Snake regions.

The scope of the injunction was clearly at issue on summary judgment. Plaintiffs have, at all times, defined the geographic scope of the injunction in relation to grizzly bear habitat, not grizzly bear recovery zones. Am. Compl. at 20; Pl.s' Mem. at 19. (Dkt. 49, 52-1.) Rather than address the geographic scope of the injunction, Defendants chose to raise arguments that the relief requested was not supported by facts or law. Def.s' Mem. at 21-22; Reply at 10 - 11. (Dkt. 60, 72.) It was not until the hearing that Defendants requested an opportunity for briefing or an evidentiary hearing "should there be a need" to determine an appropriate geographical scope. The Court determined there was no need. It is therefore improper to raise the issue now when it could have

**MEMORANDUM DECISION AND ORDER  - 18**

reasonably been raised or presented earlier in the litigation. *See Connell v. Lima Corp*., No. 1:16-cv-00456-CWD, 2019 WL 5873456, at *4 - 5 (D. Idaho Aug. 23, 2019), *aff'd on other grounds*, 988 F.3d 1089 (9th Cir. 2021) (finding new arguments raised ran afoul of Rule 59(e)). Defendants cannot raise the issue now under the guise of Rule 59(e) or 60(b).

Defendants' desire to delve into the minutiae of where grizzly bears are or are not sidesteps the Court's rationale for its injunction. The Court noted that, in ESA claims, the "balance of hardships always tips sharply in favor of the endangered or threatened species." Mem. at 43 (citing *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1035 (9th Cir. 2005) and *Marbled Murrelet*, 83 F.3d at 1073). (Dkt. 95.) Based upon grizzly bears' wide range, and the disproportionate effect on Idaho's grizzly bear population should there be even one take, the Court adequately justified the geographic scope of the injunction.

The undisputed facts established grizzly bear range has been expanding, and grizzly bears are highly transient. Defendants did not dispute that grizzly bears have been seen within the Bitterroot ecosystem and the Salmon region. As recent as May 23, 2024, Idaho Fish and Game officials confirmed a grizzly bear sighting in the North Fork Salmon River area near the Montana border. (Dkt. 105-1.) The long-term goal is to

**MEMORANDUM DECISION AND ORDER - 19**

increase grizzly bear populations in each of the grizzly bear recovery zones,[18] and grizzly bears being bears, venture outside of these zones.[19]

The Court rejects Defendants' contention that *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (9th Cir. 2024), compels a different result. In that case, the district court's preliminary injunction included areas outside the occupied grizzly range and areas that the plaintiffs did not ask to be covered by the injunction. The United States Court of Appeals for the Ninth Circuit determined the scope of the injunction was overly broad because the district court gave no explanation supporting the geographic scope, and the plaintiffs' evidence was too speculative and hypothetical to support such a broad injunction. 98 F.4th at 1196 – 97. But, because the defendants had not presented an alternative, the court remanded the matter for the district court to reconsider the injunction's geographic scope. *Id.* at 1197.

Defendants failed to present an alternative geographic scope despite Plaintiffs' consistent request for an injunction protecting grizzly bear habitat, and defining that

---

[18] For instance, the July 2014 Biological and Conference Opinion for the Wildlife Damage Management Activities in the State of Idaho discussed the efforts to increase grizzly bear populations in each of the grizzly bear recovery zones, noting the following: Grizzly bear population numbers and distribution in the Greater Yellowstone Ecosystem has "exceeded target recovery levels for the last several years;" "[P]opulation status is below recovery goals in the Cabinet-Yaak" ecosystem;" The "population may be slowly increasing" in the Selkirk recovery zone; Grizzly bear recovery in the Bitterroot ecosystem would require the reintroduction of bears from other areas….An environmental impact statement and decision notice addressing the impacts of reintroducing grizzly bears into the Bitterroot Ecosystem in east central Idaho was released in 2000. However, the Service has not moved forward with this plan." (Dkt. 52-2 at 134 – 136.)

[19] *See* U.S. Fish and Wildlife Serv., SPECIES STATUS ASSESSMENT (SSA) FOR THE GRIZZLY BEAR IN THE LOWER-48 STATES: A BIOLOGICAL REPORT 37, 55 (Jan. 2021), Qui Decl. Ex. 1 (map depicting recovery zone boundaries and monitoring areas surrounding these zones; noting bears move between recovery zones and contiguous habitat located in the northern part of the United States and Canada, and that grizzly bears have been confirmed in areas surrounding the Bitterroot Recovery Zone). (Dkt. 54.)

**MEMORANDUM DECISION AND ORDER  - 20**

habitat in broad terms. Further, the Court supported the scope of its injunction with evidence in the record. The Court therefore declines to reconsider the geographic scope of its injunction.

Moreover, Defendants overlook that the Court narrowly tailored the temporal scope of the injunction relative to Idaho's grizzly bear population. The practical effect of the Court's injunction is to eliminate 46 days of the recreational gray wolf trapping season on public land and eliminate year-round trapping on private land such that it again corresponds to the recreational trapping season on public land. This has the effect of limiting recreational wolf trapping to a period when almost all bears will be in dens, and the likelihood of encountering a grizzly bear will be virtually eliminated given Idaho's small grizzly bear population.

## CONCLUSION

The Court has carefully considered Defendants' arguments in support of their motions, and finds that they have failed to reach the high standard for this Court to reconsider or alter its earlier ruling. Defendants have not shown manifest error, new facts, or new controlling legal authority. The motions will be denied.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Idaho Officials' Motion For Reconsideration, Relief From Judgment,

   Alteration of Judgment, and Modification of Findings of Fact (Dkt. 99) is

   **DENIED**.

2)      Defendant Intervenors' Motion For Relief From Judgment, to Alter

   Judgment, and to Modify Findings of Fact (Dkt. 100) is **DENIED**.

Dated: **February 04, 2025**

Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**